The People of the State of New York, Plaintiffs in Error, *v.* John Park, James Higgins and John Riley, Defendants in Error.

One convicted of and sentenced for the crime of burglary in the third degree is thereby rendered incompetent as a witness in any cause civil or criminal, although at the time of such conviction and sentence he was under sixteen years of age, and under the statutes (chap. 100, Laws of 1840, chap. 24, Laws of 1850) sent to the House of Refuge and not to State prison.

The definition of felony as contained in the Revised Statutes (2 R. S. 701, § 30) must be construed as relating to the punishment prescribed for the crime without reference to any personal exemption of the criminal. (Lott, Grover and Daniels, JJ., *contra.*)

(Argued June 16th, 1869, decided September 23d, 1869.)

Error to the Supreme Court at the General Term in the

third district reversing a conviction for burglary at the Rensselaer County Sessions.

The defendants in error, and one Charles Corbin, were jointly indicted at the Rensselaer county Oyer and Terminer, in November, 1868, for the crime of burglary in the third degree. A *nolle prosequi* was subsequently entered as to Corbin ; the other defendants pleaded not guilty, and were tried at a Court of Sessions, held in that county in January, 1869. Upon their trial, the district attorney, on the part of the people, introduced the said Corbin and offered to have him sworn as a witness, which was objected to by the defendants' counsel, " on the ground, among others, that the witness had been previously, and in the year 1866, in the Court of Sessions, in and for the county of Rensselaer aforesaid, duly *indicted and convicted for the crime* of burglary in the third degree ; and thereupon, being under the age of sixteen years, sentenced and removed to the house of refuge, established, by the society, for the reformation of juvenile delinquents in the city of New York, pursuant to the statute in such case made and provided, where he was confined until he was discharged by due course of law, and without being pardoned or otherwise restored to his rights and privileges as a citizen ;" and produced, proved, and gave in evidence the record showing such indictment, conviction, sentence and confinement, as aforesaid, of the said witness, and insisted that he was thereby rendered incompetent to testify as a witness on said trial.

The objection was overruled by the court, and the counsel for the prisoners duly excepted to the said decision.

The said Charles Corbin was then duly sworn, and examined as a witness by and on behalf of the said people, and gave material evidence tending to prove or establish the crime, with which the prisoners were charged ; and they were convicted and sentenced to imprisonment, in the Clinton State Prison, for the term of one year and three months.

A bill of exceptions having been signed and sealed, and a certificate of probable cause, with a stay of proceedings, being subsequently granted by a justice of the Supreme

Court, the district attorney removed the case, by *certiorari*, to the Supreme Court. That court reversed the conviction and sentence, and ordered a new trial in the Court of Sessions; and the judgment, which was entered with the clerk of Rensselaer county, is brought for review to this court by the district attorney of that county, on a writ of error, allowed by a justice of the Supreme Court, in behalf of the people.

*Francis Rising*, for the People, plaintiffs in error.

*C. E. Patterson*, for the defendants in error, insisted. that the statute of 1850 did not apply to juveniles convicted of burglary in the third degree in the third judicial district, and that the word "delinquents" used in that statute did not include those guilty of the graver crimes. As to the meaning of "delinquent" and "delict," he cited Burrill's Law Dictionary; Erskine's Justice b. 4, tit. 4, § 2. He cited on the general question, chap. 100, Laws of 1840, chap. 24, Laws of 1850, chap. 304, Laws of 1850, p. 670.

JAMES, J. The defendants in error were arraigned on an indictment for burglary, and pleaded not guilty. On the trial, one Corbin was offered as a witness for the prosecution, and objected to as incompetent; it being shown that he had been previously convicted and sentenced for the crime of burglary in the third degree, and had never been pardoned or restored to his rights as a citizen. It also appeared that, at the time of such conviction, said Corbin was under the age of sixteen years, and was sentenced to the house of refuge. The objection was overruled; the witness admitted and gave material testimony, and the prisoners were convicted. The General Term of the Supreme Court reversed that conviction for error in admitting said witness, and the people bring error to this court.

The only question for consideration is the competency of Corbin to testify as a witness on the facts above stated.

Under part 4, chap. 1, of the Revised Statutes, entitled, "an act concerning crimes and their punishments," it is

declared (2 R. S., 701, § 23) that "no person sentenced upon a conviction for felony, shall be competent to testify in any cause, matter, or proceeding, civil or criminal, unless he be pardoned by the governor or by the legislature, except in the cases specially provided by law ; but no sentence upon a conviction for any offense, less than a felony, shall disqualify or render any person incompetent to be sworn or testify in any cause, matter, or proceeding, civil or criminal." Burglary in the third degree is punishable by imprisonment in the State prison for a term not exceeding five years. (2 R. S., 669, § 21.) The Revised Statutes declare the term "felony," where used therein, to mean an offense for which the offender, on conviction, shall be liable by law to be punished by death or imprisonment in State prison. (2 R. S., 702, § 30.) The term " offender," in said section, is not used as a word of limitation, making it dependent upon the personal status of the criminal, or his exemption from a particular punishment by reason of age or mental incapacity, where the offense for which he is convicted is a felony ; but as a word of general application, in a general sense, to define the punishment following the crime. The statute is to be construed as declaring that the term "felony," as therein used, means any crime which is punishable by death or by imprisonment in the State prison, without reference to the personal exemptions or exceptions of the criminal. And this is not in conflict with *Fassett* v. *Smith* (23 N. Y., 252), as that related to obtaining goods by false pretenses, the punishment for which was in the alternative, State prison, county jail, or fine ; and hence not within the statutory definition of felony.

Burglary in the third degree is *felony*, within the statutory definition of that term ; and in the view above taken it does not lose that character, because the convict is under sixteen years of age. As illustrated by counsel, it would be an absurdity, that a conviction on Monday, for a burglary previously committed, would not be a felony ; which would be a felony, had the jury delayed their verdict till the next day, when the convict had been over sixteen years of age.

Statutes should have a reasonable construction, so as to carry out the legislative intent, as far as possible. When the Revised Statutes were enacted, it is perfectly transparent what was intended by the sections under consideration. In making provision subsequently for ameliorating the punish ment of juvenile delinquents, the legislature did not intend thereby to repeal, modify or limit the statutory definition of felony. I therefore hold that burglary, in the third degree, is a felony, no matter what may be the age of the convict, or whether the particular prisoner may or may not be punishable there for in the house of refuge. That being so, and the witness, Corbin, having been convicted of such offense and sentenced, and not restored to citizenship, was excluded by the stat ute, and was incompetent to testify as a witness. His admission as a witness was error, for which the General Term properly reversed the conviction.

That reversal should be affirmed

LOTT, J. (dissenting.)    The first question to be determined on the preceding facts is, whether the case is reviewable in this court.

The right of the people, to bring writs of error, is given by chapter 82, of the Laws of 1852, by which it is provided, that "writs of error, to review any judgment rendered in favor of any defendant, upon any indictment, for any crimi nal offense, except where such defendant shall be acquitted by a jury, may be brought in behalf of the people of this State, by the district attorney of the county, where such judgment shall be rendered, upon the same being allowed by a justice of the Supreme Court; and the Court of Appeals shall have full power to review, by writ of error, in behalf of the people, any such judgment rendered in the Supreme Court, in favor of any defendant charged with a criminal offense."

A judgment was rendered and entered in this case, revers ing a conviction of the defendants by a jury, and ordering a new trial; and the writ of error was issued and allowed, in

conformity with the requirement of the statute. It is true, a new trial was ordered, and the judgment on that account was not final, but that was not necessary. The right of review extends to *any* judgment rendered in favor of the defendant, on an indictment for a criminal offense, except on his acquittal by a jury; and full power is conferred on this court to review any such judgment, when rendered by the Supreme Court.

. A reversal by that court, of a conviction of a prisoner in a Court of Sessions, is a judgment in his favor upon the indictment, although a new trial is also thereby ordered.

It not only decides, that there was error in the proceedings, on which the conviction was founded, but it adjudges him to be entitled to a new trial on the indictment, which he could not have had while the conviction continued in full force. In some cases the question of law decided, would be conclusive on the merits, and a new trial would be a mere formality; and if the decision was erroneous, it would seem to be very proper that the error should be corrected by a direct appeal to this court. And in our opinion, the statute gives that right.

This construction was given to it in the case of *The People* v. *Kennedy* (32 N. Y. R., p. 141). That came before this court, as stated in the report of it, on a "writ of error to the Supreme Court to review a judgment of that court, reversing a conviction of the defendant in error, in the Court of Sessions of Saratoga county, of the crime of arson, and ordering a new trial;" and the said "writ of error was brought by the district attorney, pursuant to the act of 1852, chap. 82," p. 141.

Exceptions were taken to the admission of evidence during the progress of the trial, and also to the charge of the judge who tried the case, on certain propositions charged, and to his refusal of a request to charge to the contrary. It is then stated, that "after the verdict of guilty, the county judge gave a certificate to stay the sentence, and the record and bill of exceptions were returned to the Supreme Court on

*certiorari*, when the judgment, on which this writ of error was brought, was given." (Page 143.)

DENIO, Ch. J., in his opinion, after considering the case on the merits, and coming to the conclusion that the judgment appealed from should be affirmed, adds : " The counsel for the defendant in error contended that we should not entertain this writ of error, because, as he insisted, the people could not bring error when the Supreme Court, after reversing a judgment, had ordered a new trial ; but he overlooked the decision of this court upon the precise point (*The People* v. *Clark*, 3 Seld., 385), and the case closes with the statement that the judgment was affirmed. The case of *The People* v. *Kennedy*, it will be seen, was, in all essential particulars, like the one under review, with this single exception : in that, the sentence was stayed ; but in this, it was pronounced before the certificate of probable cause and a stay of proceedings were granted. But the difference, in that respect, may be deemed immaterial to the real question. If it be at all material, it is a circumstance in favor of the maintenance of the writ in this case. The case of *The People* v. *Nestle* (19 N. Y. R., 583), relied on by the defendant in error, in support of his motion to dismiss the writ herein, is not inconsistent with that decision. It appears, by the statement of facts in that case, that no judgment had ever been entered therein ; " and JOHNSON, Ch. J., in the opinion given by him on dismissal of the writ, after referring to the terms of the statute of 1852, above cited, said that " it is only judgments for the defendant upon an indictment, to which the terms of the statute extend. No such judgment has yet been rendered in this case. In the General Sessions, judgment was stayed ; in the Supreme Court, a new trial was ordered ; but no judgment on the indictment for the defendant was given in either court. The case is plainly not provided for by the statute, the language of which is clear and precise. Technical words are employed, which accurately exclude such cases as the present." I am clearly of opinion, therefore, that this case is embraced and included

within the statutes, and properly before us for examination on the merits. I will add that, under the practice in civil cases before the Code, the award of a *venire de novo* on a reversal by the Supreme Court of the judgment of an inferior court, was no objection to a review of the judgment of reversal by the Court for the Correction of Errors, and a writ of error could be brought for the purpose of such review, without waiting for and having a new trial. (See *Van Santvoord* v. *St. John*, 6 Hill, 157.)

That construction, which we have put on the statute, is therefore consistent with the practice applicable to a review in such a case.

It then remains to be considered, whether the Court of Sessions erred in permitting Corbin to be sworn and examined as a witness. The objection taken to this competency, was placed substantially on the ground, that he had been convicted of the crime of burglary in the third degree; and being under sixteen years of age, and sentenced and removed to the house of refuge, established for the reformation of juvenile delinquents, in the city of New York, where he remained until discharged by due course of law, without being pardoned or otherwise restored to his privileges as a citizen; it was based on the provision of the Revised Statutes (2 Rev. S., p. 701, § 23), "that no person, sentenced upon a conviction for felony, shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless he be pardoned by the governor or by the legislature, except in the cases specially provided by law; but no sentence upon a conviction, for any offense other than a felony, shall disqualify or render any person incompetent to be sworn, or to testify in any cause, matter or proceeding, civil or criminal."

As there is no claim, that the case of Corbin comes within any special exception referred to, it becomes necessary to ascertain the meaning of the term "felony," as used in that provision. That we find in a subsequent section of those statutes (§ 30, p. 702), which declares, that the "term felony, when used in this act, or in any other statute, shall be construed to

mean an offense, for which the offender, on conviction, shall be liable, by law, to be punished by death or by imprisonment in a State prison."

These two sections must, therefore, be construed together, and may, for the purpose of construction, be incorporated into one; and by substituting the definition of the term " felony," as given in section thirty, in the place of that term itself in section twenty-two, the provision will read as follows: " No person, sentenced upon a conviction for an offense for which he, on such conviction, was liable, by law, to be punished by death or by imprisonment in a State prison, shall be competent to testify;" * * " but no sentence upon a conviction for any offense, other than one for which he was liable, by law, to be so punished, shall disqualify or render any person incompetent to be sworn or testify, &c." The question then is thus presented, whether Corbin, " the offender," was, on conviction of the offense with which he was charged (being burglary in the third degree), liable, by law, to be punished by death or by imprisonment in the State prison ; for his incompetency, if it exists at all, grows out of and is based on such liability, and that only. It is the liability of the " person sentenced," or of " the offender," to such punishment, and not the matter of the offense itself, that renders him incompetent.

The Revised Statutes, in prescribing the punishment for burglary in the third degree, declare in general terms, that it shall be punished by imprisonment in a State prison (2 R. S., p. 669, § 21); but they also declare, that " whenever any person, under the age of sixteen years, shall be convicted of any felony, the court, instead of sentencing such person to imprisonment in the State prison, may order that he be removed to, and confined in the house of refuge, established by the Society for the Reformation of Juvenile Delinquents, in the city of New York, unless notice shall have been received, from that society, that there is not room in such house, for the reception of further delinquents." (See 2 R. S., p. 701, § 17.) And special laws in force, when Corbin was indicted,

convicted and sentenced, to which I shall hereafter briefly refer, *exempted* offenders under the age of sixteen years, at least on conviction for certain crimes, and, I think, for all offenses, from such punishment.

That society was incorporated on the 29th of March, 1824, by an act entitled "An act to incorporate the Society for the Reformation of Juvenile Delinquents in the city of New York." (See Laws of 1824, chap. 126.) By the fourth section of this act, children taken up or committed as vagrants, or convicted of criminal offenses in that city, might, when adjudged "proper objects," as therein provided, be committed to and received "into the house of refuge," established by the managers of that society, who were vested with the charge and control of such children; in the case of males, during their minority, and of females, till they attained the age of eighteen years. That act was, by chapter 24 of the Laws of 1826, amended so as to authorize any child, convicted of the commission of a criminal offense, in any city or county of this State, and who should, in the judgment of the court who tried him, be deemed a proper object to be sent to such house of refuge, who was to be received by the managers, unless notice was given by them that there was not room for the reception of any further delinquents; and in the third section of that act the persons so sent were called "juvenile delinquents."

On the 8th of May, 1846, an act (chap. 143 of the Laws of that year) was passed, entitled "An act to authorize the establishment of a House of Refuge for Juvenile Delinquents in Western New York," by which provision was made for the erection of "The Western House of Refuge for Juvenile Delinquents" in the interior or western portion of this State, and for the reception therein, when in readiness therefor, of all male children under the age of eighteen years, and all female children under the age of seventeen years, legally committed thereto as vagrants, or on a conviction for any criminal offense by any court having authority to make such commitments; and the governor, on receiving a certificate

of such readiness from the commissioners appointed for the erection thereof, was required to make an order designating the counties which should thereafter " be authorized to send juvenile delinquents to the said house of refuge," and the sixteenth section of the act contains this declaration and provision, viz. : that " from and after the time of making such order, the courts of criminal jurisdiction of the several counties designated in said order shall sentence to said house of refuge every male under the age of eighteen years, and every female under the age of seventeen years, who shall be convicted before such court of any felony. The said courts and the several magistrates of the said counties may, in their discretion, sentence to said house of refuge any such male or female who may be convicted before them of any petit larceny ; and the courts and magistrates of the county where such house of refuge may be located, may also, in their discretion, send to said house of refuge any such male or female who may be convicted before them as a vagrant ; " and the eighteenth section repealed all provisions of existing laws which required the courts of any of the counties named in such order of the governor, to sentence persons to the house of refuge in the city of New York, so far as the same related to the counties so named.

On the 26th of February, 1850, an act was passed, entitled " An act in relation to Juvenile Delinquents," and took effect immediately. (Chap. 24 of the Laws of 1850.) The first section of this act has a very important bearing on the case under review, and is in these words, viz. : " From and after the passage of this act, it shall be the duty of the several courts having criminal jurisdiction, and who shall hold courts within the limits of the fourth, fifth, sixth, seventh, and eighth judicial districts of this State, to order all juvenile delinquents, by them respectively sentenced, to be removed (and all such delinquents convicted in the first, second, and third judicial districts, shall be ordered by such court to be removed to and confined in the house of refuge, established by the Society for the Reformation of Juvenile Delinquents

in the city of New York) to the Western House of Refuge for Juvenile Delinquents, in the city of Rochester."

On the 10th of April, in the same year, an act was passed (chap. 304) amending the sixteenth section of the act of 1846, authorizing the establishment of the western house of refuge, so far as to restrict its provisions to males under the age of sixteen years.

I have referred to the provisions of the several acts relating to the house of refuge in the city of New York with considerable particularity, for the purpose of showing that it was not obligatory on the courts, originally, to sentence juvenile offenders, coming within their provisions, to that institution ; and that the propriety or expediency of doing so was entirely discretionary with them until the act of February 26, 1850, took effect ; while on the other hand it was, under the act authorizing the erection of the western house of refuge, made the duty of every court of criminal jurisdiction of the several counties designated in the order of the governor, to send all persons under the prescribed age, convicted before it, to such house. This distinction was removed by the act of February, 1850 ; and although the language in reference to the two institutions is not precisely the same, that applicable to the western house of refuge, declaring that "it shall be the duty" of the courts designated in certain judicial districts, to order all juvenile delinquents sentenced by them to be removed to it, while in reference to the other districts the language used is, that such delinquents "shall be ordered" by the court before which the conviction is had, to be removed to and confined in the house of refuge in New York, in both cases a duty is prescribed, an order for the removal is to be made ; and although it is true that sometimes the word "shall" may be con structed "may," such construction should not be given to it unless clearly called for by the subject-matter of the context. In the statute referred to, the subject-matter in the two cases is the same, and the whole scope and object of the act is, in my opinion, clearly to require the removal of such offenders

to a reformatory institution, instead of punishing them in the State prison or county jail, and it is made mandatory on the courts to make an order to that effect in all cases.

The learned justice who delivered the opinion of the Supreme Court, construes the terms "juvenile delinquents" as used in the act of 1850, so as not to include "any juveniles convicted of a felony," who were already provided for by previous laws, but related to offenders of less grade only.

There appears to be no ground for such distinction. A delinquent, among other definitions by Webster, is defined to be "an offender; one who commits a fault or crime;" and it appears to me evident that the "juvenile delinquents," intended by that act, are the persons who, under the age prescribed in the acts regulating the two designated houses of refuge, are to be sent thereto, and who were so named (as I have before stated), in the third section of the act of 1826, amendatory of the act for the establishment of the house of refuge in New York.

Assuming, then, that under the law existing at the time when Corbin was convicted, that he was not liable to be sentenced to imprisonment in a State prison, it follows that he did not come within the provision under which it was claimed that he was rendered incompetent to be a witness.

The effect of the statute of 1850 was substantially to except the case of offenders under the age of sixteen years, convicted of an offense which, under the general statute, is punishable by imprisonment in a State prison from that statute, and to declare that it shall not extend to them ; or, in other words, as applicable to this case, that the punishment for burglary in the third degree shall be imprisonment in a State prison, except when the offense is committed by a male under the age of sixteen years, and then it shall be by confinement in the house of refuge in the city of New York.

There are other cases where the punishment prescribed for the same offense is different, as applicable to different offenders convicted of it. Thus, in a case of petit larceny committed by two parties, it may be that, as to one, it was

his first offense, and punishable by imprisonment in the county jail, and which would not affect his competency as a witness; but as to the other, it might be a second offense, and punishable in the State prison, which would render him incompetent to testify. This is a confirmation of the principle or rule, before asserted, that it was the liability by law of the offender to be punished in a State prison for an offense, and not the particular offense itself which creates the incompetency.

My conclusion upon the whole case, therefore, is, that the General Term, in reversing the conviction, erred, and should have decided against the exception, and have remitted the proceedings to the Court of Sessions of Rensselaer county, with directions to proceed thereon. It follows that the judgment of the Supreme Court should be reversed, and a judgment entered by it to the effect above indicated.

HUNT, Ch. J., MASON, WOODRUFF and MURRAY, JJ., concurred with JAMES, J., for affirmance.

GROVER and DANIELS, JJ., with LOTT, J., for reversal.

Judgment affirmed.