## UNITED STATES v. WATKINDS.

*(Circuit Court, D. Oregon.   March 11, 1881.)*

1. INDICTMENT—KNOWINGLY.

An indictment for voting without having a lawful right to vote, contrary to section 5511, Rev. St., should contain an allegation that the defendant "knowingly" so voted, even if the possession of such knowledge by him is a mere question of law.

2. CONVICTION OF CRIME — FORFEITURE OF THE PRIVILEGE OF AN ELECTOR.

The constitution of the state of Oregon (article 2, § 3) declares that " the privilege of an elector shall be forfeited by a conviction of any crime which is punishable by imprisonment in the penitentiary." The defendant was indicted for an assault with a dangerous weapon, con-trary to section 536 of the Oregon Criminal Code, which crime was thereby made punishable by fine or imprisonment in the jail or peni-tentiary, in the discretion of the court, to which accusation he pleaded guilty, and was sentenced to pay a fine of $200. Afterwards, on June 7, 1880, the defendant voted for representative in congress at an elec-tion held in Madison precinct, Oregon. *Held,* (1) that the term " con-viction," as used in the constitution of Oregon, *supra,* is used in its primary and ordinary sense, and signifies a proving or finding that the defendant is guilty, either by the verdict of a jury or his plea to that effect, and does not include the sentence which follows thereon; (2) that a crime " is punishable by" imprisonment in the penitentiary when by any law it may be so punished, and the fact that it also may be or is otherwise punished, does not change its grade or character in this respect; (3) that the defendant was convicted, by his plea of guilty, of a crime punishable by imprisonment in the penitentiary, and thereby forfeited his privilege as an elector under the constitution of Oregon; and (4) that, assuming the term " conviction " to include the sentence, still the defendant was convicted of a crime so punish-

able, the liability to such punishment and not the punishment actually inflicted being the circumstance which controls the effect of the conviction in this respect.

**3.** PARDON.

*Semble*, that such forfeited privilege may be restored by a pardon to that effect, granted in pursuance of a statute expressly authorizing it.

Indictment for Voting Unlawfully, contrary to section 5511, Rev. St.

*Rufus Mallory*, for the United States.

*H. Y. Thompson, George H. Durham, Sidney Dell*, and *W. W. Page*, for the defendant.

*R. S. Strahan* also submitted a brief for the defendant.

DEADY, D. J.    On December 17, 1880, the defendant was indicted, by the grand jury of the district court for the district of Oregon, for the violation of section 5511 of the Revised Statutes, committed by voting on June 7, 1880, for a representative in congress, at an election for such representative, in Madison precinct, county of Multnomah, state of Oregon, without having a lawful right to do so, for that, on June 28, 1871, he was indicted by the grand jury of the circuit court for the county of Marion, state of Oregon, of the crime of an assault with a dangerous weapon committed upon the person of Samuel A. Clarke, by shooting at him with a pistol, of which crime he was, on June 30th, thereafter, duly convicted by his plea of guilty to said indictment, and sentenced to pay a fine of $200 and the cost of prosecution.    The indictment was afterwards transferred to this court, and the defendant comes and demurs thereto, because : (1) It does not allege that the defendant voted as charged knowing he had no right to vote ; and (2) upon the facts stated therein the defendant was not disqualified to vote as charged.    The section (5511) under which the indictment is found declares that "if, at any election for representative or delegates in congress, any person knowingly personates and votes, or attempts to vote, in the name of any other person, whether living or dead, or fictitious, or votes more than once at the same election for any candidate for the same office, or votes at a place where he may not be lawfully entitled to vote, or votes without having a lawful right to vote,

\* \* \* he shall be punished by a fine of not more than $500, or by imprisonment not more than three years, or by both, and shall pay the costs of the prosecution."

The defendant, in support of the first ground of his demurrer, contends that the word "knowingly" is understood and implied, in each clause of this sentence, so that it must be construed as if it read, "knowingly personates and votes, or attempts to vote, etc,; or knowingly votes more than once, etc.; or knowingly votes at a place, etc.; or knowingly votes without having a lawful right to vote." And I have no doubt that such is the true construction of it. In *U. S.* v. *Anthony*, 11 Blatch. 200, which was an indictment upon the same statute for the same offence, it appears to have been so construed as a matter of course. The court, in speaking of the section under consideration, saying that the "act makes it an offence for any person knowingly to vote for such representative (a representative in congress) without having a lawful right to vote." And, as this case was well contested on the part of the defendant and turned solely upon the question of her knowledge of her want of right, this reading of the statute must have passed without contention, as being too plain for argument. In that case the defendant was qualified to vote, except for her sex; the law of the state (New York) being that none but males should vote. The defendant voted, claiming that under the fourteenth amendment to the constitution of the United States she was entitled to, notwithstanding she was a female. It was held, *Hunt*, J., that as the defendant knew all the facts, and was presumed to know the law, her belief that she had a right to vote, when she had none, was no defence to the indictment, and therefore the court directed the jury to find the defendant guilty, which was done. The belief in such case may affect the sentence, but not the verdict. Whar. Cr. L. § 1835.

But the true reading of the statute being that the defendant's knowledge of the want of right to vote is an essential part of the crime, it should be expressly alleged in the indictment. Bish. Stat. Cr. § 827 *et seq.*; Whar. Cr. P. & P. § 164. The demurrer upon this point is sustained. But as another

grand jury may correct the indictment in this particular, or the defendant may be prosecuted by information, (section 1022 Rev. St.; *U. S.* v. *Block,* 4 Sawy. 211,) it is necessary, for the purpose of determining whether he ought to be held to answer further, to pass upon the second cause of demurrer. The solution of the question made upon this cause of demurrer lies within a small compass, and depends primarily upon the signification of the term "conviction" and the phrase "is punishable," as used in section 3 of art. 2 of the constitution of the state. The article is devoted to the subject of "Suffrage and Elections." The first section only declares, in a somewhat oracular manner, without practical definition or limitation, "All electors shall be free and equal." The second one confers the right to vote upon all persons who are entitled under any circumstances to exercise that privilege within this State; and the third limits the second, by declaring who shall not be entitled to such privilege, and also by what means the privilege conferred by said section 2 may be lost. It reads: "No idiot or insane person shall be entitled to the privilege of an elector; and the privilege of an elector shall be forfeited, by a conviction of any crime which is punishable by imprisonment in the penitentiary." The argument in support of the demurrer is to the effect that "conviction" of a crime takes place by the operation or effect of the sentence or judgment of the court determining and imposing the punishment therefor, and that as the defendant was only sentenced to pay a fine of $200, he was therefore not convicted in the state court of a crime punishable by imprisonment in the penitentiary.

The authority cited and mainly relied upon to support this argument is *People* v. *Cornell,* 16 Cal. 187. The case is briefly and obscurely reported. It contains a short opinion by *Cope* and *Baldwin,* JJ., each,—*Field,* J., dissenting,—and relates to an appeal taken by a defendant from a judgment upon his plea of guilty. The authority of the case will be better understood by the following statement of it: The defendant was indicted for an assault with intent to commit murder, and pleaded guilty to an assault with a deadly weapon with intent to commit bodily injury, and was sentenced to

pay a fine of $1,200, or be imprisoned in the county jail. The crime of which the defendant was convicted by his plea of guilty was punishable by imprisonment in the penitentiary, or by fine, or both; and by the law of the state any crime "punishable by death or imprisonment in a state prison" was a felony. Hittell's Laws, §§ 1452, 1592. By the constitution of the state, article 6, § 4, (Hittell's Laws, 35,) it was provided that the supreme court of the state should have appellate jurisdiction "in all criminal cases amounting to a felony."

Counsel for the state moved to dismiss the appeal, and the motion turned upon the decision of the question, whether the defendant's right to an appeal depended upon the nature of the crime charged in the indictment or confessed by his plea of guilty, or the punishment imposed upon him by the sentence of the court. The court held that the defendant having been sentenced as for a misdemeanor, an appeal would not lie from such judgment, because its appellate jurisdiction was limited to a "case amounting to felony." The court considered the case on the appeal, as one of misdemeanor, and therefore not within its appellate jurisdiction.

It is true that in the opinions of the judges the terms "conviction" and "judgment" are used indiscriminately, and the punishment inflicted is spoken of as determining the grade of the offence. But these expressions must be taken and considered with reference to the question before the court, which was whether a judgment as for a misdemeanor was a case of felony within the meaning of that clause in the constitution giving it appellate jurisdiction "in all criminal cases amounting to felony;" and the answer was in the negative, because, so far as the defendant was concerned, the right to an appeal depended upon the nature of the result as to him, and not the charge.

In the same way section 22 of the judiciary act, (1 St. 84; Rev. St. § 691,) giving the supreme court appellate jurisdiction over the judgments of the circuit courts in actions where "the matter in dispute" exceeds in value a certain sum, has been construed so that, upon the appeal of the defendant,

the value of the matter in dispute is measured by the amount of the judgment against him, while in the case of the plaintiff it is measured by the amount of the claim or charge. *Gordon* v. *Ogden*, 3 Pet. 33; *Knapp* v. *Banks*, 2 How. 73; *Ryan* v. *Bendley*, 1 Wall. 66; *Walker* v. *U. S.* 4 Wall. 163.

In *People* v. *War*, 20 Cal. 117, the question of the right of appeal in criminal cases came up again, and the court held (p. 120) that the statute definition of a felony—a public offence punishable by death or imprisonment in a state prison—included any offence which may be or is liable to such punishment; and that although the offence charged in an indictment may, in the discretion of the court, be punished simply by a fine, still it is a felony, and an appeal will lie by the people from a judgment sustaining a demurrer thereto. In noticing *People* v. *Cornell*, the court said the jurisdiction of the appeal was denied in that case upon the ground that "the nature and extent of the punishment fixed the right of the appeal" by the defendant.

In *People* v. *Apgar*, 35 Cal. 389, the defendant was indicted for an assault amounting to a felony, and convicted and sentenced for a simple assault. He appealed upon the ground that the character of the offence charged gave jurisdiction, but the appeal was dismissed upon the ground that he was acquitted of the felony and only convicted of a misdemeanor, and that therefore the case on appeal did not amount to a felony; and in referring to *People* v. *Cornell*, the court said it was held therein that the judgment determined the character of the case for the purpose of an appeal. The effect of the decision, then, in *People* v. *Cornell*, as I understand it, and as interpreted in both the cases of War and Apgars goes no further than that, unless the judgment in a criminal case imposed the punishment prescribed for a felony, the defendant cannot have the benefit of an appeal from it. But the question in this case is not whether the defendant has been convicted of a felony or misdemeanor, but whether he has been "convicted" of a crime "which is punishable by imprisonment in the penitentiary." And the fact that a subsequent statute (Or. Cr. Code, § 3) has declared a crime "which is or

may be punishable by imprisonment in the penitentiary" to be a felony, does not have any bearing upon the case, unless it is to show that in the legislative mind the liability to such punishment.fixes the grade of the offence and not the punishment actually inflicted.

In the argument for the defendant it has been assumed that "conviction" of a crime includes and is the result of the judgment or sentence of the court imposing the punishment prescribed therefor. But this is altogether a mistake. The term conviction, as its composition (convinco, convictio) sufficiently indicates, signifies the act of convicting or overcoming one, and in criminal procedure the overthrow of the defendant by the establishment of his guilt according to some known legal mode. These modes are, (1) by the plea of guilty, and (2) by the verdict of a jury.

Speaking of the difference between conviction and attaint, Lord Coke says: "The difference between a man attainted and convicted is that a man is said convict before he hath judgment; as if a man be convict by confession, verdict, or recreancy." To the same effect is the definition in Blount's Law Dic. anno 1670, verbum, "convict."

Blackstone (4 Black. 362) says: "If the jury find him [the defendant] guilty, he is then said to be convicted of the crime whereof he stands indicted, which conviction may accrue two ways: either by his confessing the offence and pleading guilty, or by his being found so by the verdict of his country." Again he says: "After trial and conviction the judgment of the court usually follows." Id. 364. "We are now to consider the next stage of criminal prosecution after trial and conviction are past, * * * which is that of judgment," (Id. 375;) and "the plea of autrefois convict, or a former conviction for the same identical crime, though no judgment was ever given, or perhaps will be, * * * is a good plea in bar to an indictment." Id. 336.

Bishop, Statutory Crimes, § 348, says: "The word conviction ordinarily signifies the finding of the jury, by verdict, that the prisoner is guilty. When it is said there has been a conviction, or one is convict, the meaning usually is not

that sentence has been pronounced, but only that the verdict has been returned. So a plea of guilty by the defendant constitutes a conviction of him."

Mr. Justice Story, in *U. S.* v. *Gibert*, 2 Sum. 40, while considering the maxim, "No man is to be brought into jeopardy of his life more than once for the same offence," said: "Conviction does not mean the judgment passed upon the verdict;" and in the same case held that a plea of *autrefois convict*— a former conviction—will be sustained by a confession or verdict, even when there has been no judgment; citing 2 Hawk. P. C. *c.* 36, §§ 1, 10.

In *People* v. *Goldestin*, 32 Cal. 432, it was held that a plea of guilty upon which no judgment was given was nevertheless a conviction, and would therefore sustain a plea of former conviction to an indictment for the same offence. And the very statute under which the defendant was indicted uses the term in the same sense. It provides that any person, "upon conviction" of the crime therein defined, shall be punished as the court, within certain limits, may thereafter direct or adjudge by its sentence or judgment.

But, while this is the primary and usual meaning of the term "conviction," it is possible that it may be used in such a connection and under such circumstances as to have a secondary or unusual meaning, which would include the final judgment of the court. Bish. St. Cr. § 348; Whar. Cr. P. & P. § 935. Yet in *Stevens* v. *People*, 1 Hill, 261, it was held sufficient, in an indictment for a second larceny, to allege a prior conviction of the defendant, without averring that there was any judgment or sentence pronounced against him; but the contrary appears to have been held in *Smith* v. *Com*. 14 S. & R. 69, cited in Whar. Cr. P. & P. *supra*.

But there is nothing in the subject or the language of the clause of the constitution under consideration to indicate that the term "conviction" is used therein in any other than the ordinary sense. Of course, it is used there and elsewhere with the understanding that the conviction was not afterwards set aside or annulled by the court. And this is probably the point of the ruling cited from 14 S. & R. *supra*, that

the indictment, in alleging a prior conviction of the defendant, should allege a judgment on the verdict, not as constituting the conviction, but as conclusive evidence that it had not been set aside and was still in force. It follows, then, that the defendant, having pleaded guilty to an indictment charging him with an assault with a dangerous weapon, he was thereby convicted of such crime—proven guilty thereof. It only remains to consider whether this crime was punishable by imprisonment in the penitentiary or not. As has been stated, the punishment prescribed by the statute defining the offence is either a fine, imprisonment in the jail or in the penitentiary, in the discretion of the court. For the defendant it is contended that it was not punishable in the penitentiary, simply because it was not actually so punished, and section 764 of the Or. Cr. Code is relied upon as in some way supporting this position. Now, this section is simply declaratory of the pre-existing power of the court, and only requires it to determine the punishment applicable to a particular case, when that is left by the statute undetermined between certain limits or kinds. But it does not authorize the court to impose a punishment in any case which the law has not otherwise prescribed for the commission of the offence. Under the Code a crime is punishable—may be punished—by any punishment which the court is authorized to impose. It is punished by the punishment actually imposed, but it is punishable by any punishment that the law authorizes the court to impose. The phrase "is punishable" cannot be construed to mean more or less than "may be punished," or "liable to be punished."

In *People* v. *Van Steenberg*, 1 Park. C. R. 39, it was held that a crime which, in the discretion of the court, might be punished by a fine or imprisonment in the jail or penitentiary, was a felony within the statute definition thereof, to-wit, "an offence for which the offender, on conviction, shall be liable by law to be punished by death or imprisonment in the state prison."

*In People* v. *Park*, 41 N. Y. 21, it was held that a person sentenced upon a conviction of a burglary, punishable gener-

ally by imprisonment in the penitentiary, was sentenced upon a conviction for felony within the meaning of the above definition, although, being under 16 years of age, he was, in pursuance of a special statute, sentenced to a house of refuge for juvenile delinquents instead of the penitentiary, and therefore that he was within the purview of the statute prohibiting persons from testifying as witnesses who had been "sentenced upon a conviction for felony." To the same effect is *Andrew* v. *Dieterich*, 14 Wend. 34; *Peabody* v. *Fenton*, 3 Barb. Ch. 462; *Fassett* v. *Smith*, 23 N. Y. 255.

Indeed, the proposition that a crime which may be punished by imprisonment in the penitentiary—a crime which is liable to such punishment—is made punishable thereby, is so self-evident that it hardly admits of argument.

The conviction of the defendant of an assault with a dangerous weapon was had by and upon his plea of guilty to the indictment charging him therewith. Thenceforth he stood convicted of a crime punishable by imprisonment in the penitentiary, and the liability to such punishment and not the punishment actually inflicted is the circumstance which controls the effect of the conviction in this respect. And the subsequent action of the court in giving judgment upon such conviction could not change the nature or effect thereof.

By virtue of section 3 of art. 2 of the constitution, as a consequence of this conviction, the defendant then and thereby forfeited the privilege of an elector, and thereafter had no lawful right to vote at any election in Oregon.

And even if it were conceded that the term "conviction" is used in the constitution in the sense of or so as to include the sentence of the court, still the conclusion would be the same. It would nevertheless be true that the defendant was convicted of and sentenced for a crime which was then punishable by law by imprisonment in the penitentiary. The fact that he was otherwise punished for it is entirely immaterial, because the forfeiture of his privilege as an elector did not depend upon the kind or measure of punishment actually inflicted, but the kind that might have been—the kind that

the defendant was liable to, and the court was authorized to impose.

So much for the legal aspect of the case. A word as to the moral one.

Throughout the argument for the defendant the court has been pressed with the suggestion and assumption that this prosecution is in some way an injustice to him, and that it is a great hardship for an elector to forfeit his privilege for the conviction of a crime which was only punished by the imposition of a comparatively small fine. In answer to the suggestion of injustice, it is sufficient to say that the prosecution is lawful. It is conducted by the attorney of the United States, upon the authority of a grand jury of more than 16 electors and tax payers, impartially selected and drawn from the body of the district, for the alleged violation of one of its most important laws—the law to preserve the purity and integrity of the election of representatives in congress. Neither is there any hardship in the case that can enter into the present consideration of it.

For reasons of public policy, the constitution of the state conferred the privilege of an elector on the defendant, during good behavior, and for like reasons declared it forfeited—withdrawn—upon his conviction of a crime of such character as presumptively proved him no longer fit for its exercise. Nor is this presumption affected by the fact that the court before which the defendant was tried saw proper, in the exercise of that discretion confided to it, to impose a comparatively slight punishment upon him. Under the constitution the conviction of a crime, for which the offender is liable to imprisoment in the penitentiary, works a forfeiture of the privilege of an elector, irrespective of the kind or measure of punishment which the judge, under the circumstances,—personal, social, political, or otherwise,—may see proper to impose as a punishment for it.

The law gave and the law had taken away—subject, it may be, to the operation of a pardon expressly restoring the privilege, and granted in pursuance of an act of the legislature authorizing it.

The demurrer to the indictment is sustained on the first ground; but, as it also appears that the defendant voted as charged in the indictment without having a lawful right to do so, the case is continued to await the action of another grand jury, or for prosecution by information, as the district attorney shall determine.