THE THRASHER.

(Circuit Court of Appeals, Ninth Circuit. August 2, 1909.)

No. 1,704.

1. SEAMEN (§ 30*)—DISCIPLINE AND PUNISHMENT—STATUTORY PROVISIONS.

Rev. St. § 4596, as amended by Act Dec. 21, 1898, c. 28, § 19, 30 Stat. 760 (U. S. Comp. St. 1901, p. 3113), which provides that seamen for willful disobedience to lawful commands shall be punishable at the option of the master by being placed in irons and by a forfeiture of pay, and for continued willful disobedience by being placed in irons on bread and water until such disobedience shall cease, and also by a forfeiture of pay, does not deprive the master of authority in his discretion to impose a milder punishment.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 195–211; Dec. Dig. § 30.*]

2. SEAMEN (§ 30*)—DISCIPLINE AND PUNISHMENT—CONSTRUCTION OF STATUTE —"PUNISHABLE."

In Rev. St. § 4596, as amended by Act Dec. 21, 1898, c. 28, § 19, 30 Stat. 760 (U. S. Comp. St. 1901, p. 3113), providing that offenses by seamen shall be punishable as therein prescribed, the word "punishable" does not mean "must be punished," but "may be punished" as therein provided.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 195–211; Dec. Dig. § 30.*

For other definitions, see Words and Phrases, vol. 7, p. 5849.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SEAMEN (§ 30*)—DISCIPLINE AND PUNISHMENT—LAWFULNESS OF PUNISHMENT.

An order of the master of a vessel requiring a seaman to go aloft and scrape the masts as a punishment for fighting in violation of orders, *held* within the master's discretion, and the placing of the seaman in irons with a stick under his knees and over his arms for his refusal to obey the first order, until he would consent to do so, not to entitle him to recover damages against the ship; the evidence being that it caused him no appreciable suffering.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 195–211; Dec. Dig. § 30.*]

Appeal from the District Court of the United States for the Northern District of California.

Edward C. Dean, appellant, brought a libel in rem against the whaling vessel Thrasher to recover $600 damages on account of alleged breach of the contract of good treatment. Appellant's allegations are, in effect, that he was a mariner, and, after signing shipping papers, went aboard the Thrasher in the month of February, 1908, to go as a seaman for a whaling voyage in the North Pacific and Arctic Oceans: that in April, 1908, while the vessel was in Bering Sea, fast in ice, with the temperature below freezing, the master of the ship, without justification, caused libelant to be sent aloft, and there to be kept for about an hour and a half scraping the main royal and topgallant masts; that while scraping the masts libelant's hands became so numb that he could not continue scraping; that thereupon said libelant was ordered down from aloft, and that the master caused handcuffs to be put on libelant's wrists, and his wrists, when handcuffed, to be placed below his knees with a pole placed over each of his arms at the elbows, and under each of his knees, the pole being lashed with stout ropes; that while so tied libelant was confined in the runway of the vessel for about 45 minutes: that after he was released the master again sent him aloft to scrape the masts, and kept him aloft for about an hour, when he was permitted to come down and to have one hardtack and a cup of water, and was then again sent aloft to continue scraping, and was kept aloft about an hour and a half.

Claimant denies the allegations of cruelty and breach of the contract of good treatment, and alleges, in substance, that during good weather the libelant was sent aloft to scrape the top-gallant mast as a punishment for assaulting other members of the crew: that libelant persistently disobeyed the orders of the master, and was thereupon ordered to be put in irons. Claimant sets up willful disobedience of orders, and denies that a stick was put under libelant's knees so as to cause him any suffering unless his position would continue for a long period of time. It says that the master told libelant that he could be released the moment he would declare himself ready to obey orders and submit to the master's reasonable discipline; but that libelant willfully refused to obey orders, and therefore voluntarily remained in irons and confinement, but was released as soon as he agreed to submit to the master's lawful orders. Claimant denies that the master caused libelant to be sent aloft a second time without justification, denies that the master kept him aloft for about an hour, and says that the master kept him aloft a much shorter time, and only long enough to ascertain that libelant obeyed lawful orders and submitted to lawful discipline, denies that libelant was sent aloft a third time, and denies all allegations of pain, suffering, and distress.

The issues were tried before the District Court, where it was decided that the evidence sustained the allegations of the answer, and that the facts affirmatively stated in the answer constituted a sufficient defense to claim of libelant for substantial damages. Decree was entered dismissing the libel with costs. Libelant appeals.

F. R. Wall, for appellant.
Andros & Heugstler, for appellee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge (after stating the facts as above). We will assume that appellant is correct in his position that sections 4596 and 4597 of the Revised Statutes of the United States of 1878, as amended by Act Dec. 21, 1898, c. 28, §§ 19, 20, 30 Stat. 760, 761 (U. S. Comp. St. 1901, pp. 3113, 3115), relating to offenses of seamen and punishment therefor, are applicable to whalers as seamen, and that by section 26 of the act whaling vessels are brought within its provisions, and upon this assumption we will inquire whether the decision of the District Court should be overruled or not.

There was ample evidence to show that the libelant seaman had frequently made assaults upon his shipmates, that he was a quarrelsome man of bullying nature, and that he had been reprimanded for "slugging" shipmates on several occasions shortly before the incidents which gave rise to this action. It appears that upon April 11, 1908, he assaulted a shipmate, thus disobeying the captain's express order that there should be no fighting. While the captain was reprimanding him for this last assault, several of the crew told the mate that, unless the captain stopped libelant from fighting the men in the forecastle, they would kill him. The mate at once told the captain what the men said, and, to punish libelant for the assault, the captain ordered him to go to the masthead and scrape it. The temperature was probably just below freezing, so libelant took his mitts and coat. Claimant's evidence is to the effect that libelant sat at the masthead for about 20 minutes, but did not scrape; that thereupon he was called down, and asked if he was going to scrape the mast; that he said "No," and refused duty; that the captain then asked him if he knew what would become of him if he refused to do duty; that he replied that he would go in irons first, and would stay there; that thereupon, by the captain's orders, the mate put libelant in irons with his wrists below the knees, and a stick placed under his knees, so tied with twine as to prevent him from shoving his feet out; that libelant was told that he would be released whenever he would "sing out" and "be a man," and do his duty. Libelant was put in the runway, where he remained in irons about 45 minutes, when he asked to be and was released. It is in evidence that he was then again sent to the masthead for about half an hour, finished scraping, and came down, and was given a meal of hardtack and water for dinner. Whether he was sent back to the masthead a third time, is not clear. The story of libelant conflicted in part with that of the master and mate, libelant saying, among other things, that he scraped the mast until his hands became numb, and that he did not refuse to scrape any longer. He also said that by his treatment and the position he was in he was made to suffer, while claimant's evidence is to the effect that his position would not produce suffering unless he remained in it for some period of time.

From all these facts, it is plain that libelant was guilty of willful disobedience of the order of the master not to fight, and that he was liable to severe punishment therefor. The act of December 21, 1898 (Rev. St. § 4596) provides that, whenever any seaman who has been

lawfully engaged commits any of the offenses enumerated in the act, "he shall be punishable as follows":

"Fourth. For willful disobedience to any lawful command at sea, by being, at the option of the master, placed in irons until such disobedience shall cease, and upon arrival in port, if of the United States, by forfeiture from his wages of not more than four days' pay, or upon arrival in a foreign port by forfeiture from his wages of not more than four days' pay, or, at the discretion of the court, by imprisonment for not more than one month.

"Fifth. For continued willful disobedience to lawful command or continued willful neglect of duty at sea by being, at the option of the master, placed in irons, on bread and water, with full rations every fifth day, until such disobedience shall cease, and upon arrival in port, if of the United States, by forfeiture, for every twenty-four hours' continuance of such disobedience or neglect, of either a sum of not more than twelve days' pay or sufficient to defray any expenses which have been properly incurred in hiring a substitute, or upon arrival in a foreign port, in addition to the above penalty, by imprisonment for not more than three months, at the discretion of the court."

As we understand appellant's argument, it is that inasmuch as the statute quoted provides that one doing an act is punishable in a certain way, and inasmuch as there is no expressed liability to punishment in any other way, the master of a ship has no right to impose any punishment upon a seaman committing an offense enumerated in the statute by means other than those expressly specified in the statute. As applied to the facts, it is contended that, when this libelant willfully disobeyed the command of the master against fighting, the only right of punishment which the master had was to put him in irons, to enforce forfeiture of wages or otherwise to punish more severely, as the disobedience may have warranted, and as the statute has specified. Involved, too, in this argument, is the proposition that the master exceeded his authority in the first order to libelant to scrape the masts. The necessary deduction from this reasoning is that the master of a ship has no right or power to impose less punishment for disobedience of a lawful order than the full measure written in the law, and that no matter how slight may be the disobedience to a command, or how trivial may be the continued neglect of duty, if it has been willful, the offending seaman must either go unpunished altogether or be put into irons with possible loss of pay, and on bread and water until the disobedience shall cease. If this is correct, the master has no power to punish by way of change of duty. Carried farther forward, it leads to the conclusion that there can be no administration of correctional discipline by way of confinement unless in irons, and that irons alone may not fulfill the exactions of the law in instances of continued willful disobedience, for the language specifies irons and bread and water, and it may be forfeiture of pay besides. We cannot accept the conclusions made inevitable by the argument. They would lead to the establishment of rules practically taking from the master a right to punish mildly if the exigencies warranted his doing so. A result would be the denial of the master's discretion to exercise humane consideration for seamen, which pervades the spirit of maritime law, notwithstanding the absolute authority necessarily possessed by a master on board his ship.

The common as well as the marine law makes it lawful for the master to correct mariners in a reasonable and moderate manner as the

particular circumstances of each case may call for; and in providing that a seaman guilty of willful disobedience "shall be punishable" by irons and forfeiture of pay, or irons, bread and water, and forfeiture of pay, as the circumstances of the disobedience may warrant, Congress could not have meant to circumscribe the right of the master by taking from him authority to impose a less severe punishment, where the master in his discretion chooses to impose it, or to deprive him of the power to apply punishment by way of correction to preserve the good order and discipline of the ship. The word "punishable" does not mean "must be punished" but "liable to be punished" as specified. In re Mills, 135 U. S. 263, 10 Sup. Ct. 762, 34 L. Ed. 107; People v. Keating, 61 Hun, 260, 16 N. Y. Supp. 748; U. S. v. Watkinds (C. C.) 6 Fed. 152; People ex rel. v. Murphy, 185 Ill. 623, 57 N. E. 820. Surely it does not lie in the mouth of a seaman who has been guilty of willful disobedience of a lawful order to complain that the punishment imposed was not as severe as the offense made him liable for. In discussing the rights and duties of masters of ships in relation to the crew during the voyage Judge Story, in United States v. Freeman, Fed. Cas. No. 15,162, said:

"It is doubtless true that the master has a right to require of them a prompt and ready performance of duty, and an habitual obedience to reasonable commands at all times. The safety of the ship and the success of the voyage essentially depend upon the due enforcement of this right. And in proportion as the urgency of the occasion, and the necessities of the sea service, require instant compliance with such commands, the duty of the seamen to obey become more pressing and obligatory. If obedience does not follow, the master may compel it by punishment, and the nature and extent of the punishment must be decided by the exigency of the case. The master may also apply punishment by way of correction for past as well as present offenses to preserve the good order and discipline of the ship. But, after all, however summary or strict may be his power, it is not unlimited, nor is it to be exercised in an arbitrary, cruel, or revengeful manner. The authority of the master on board the ship is nearly allied to that of a parent, and is to be used with reasonable tenderness and humanity. No punishment can be inflicted unless for reasonable provocation or cause; and it must be moderate and just and proportionate to the nature and aggravation of the offense. The law does not permit the master to gratify a brutal and low revenge, or to inflict cruel and unnecessary punishments. It allows no excess, either in the mode or the nature, or the object of the punishment. It upholds the exercise of the authority only when it is for salutary purposes, not when it arises from personal prejudice, caprice, or dislike, or from gross and vindictive passions."

The order to scrape the masts was in itself to do a seaman's duty, and the District Court evidently did not believe libelant's story that he suffered seriously from cold. We cannot find that the order was unreasonable or unjustifiable, although the motive for the order was to punish. It was very much less severe a penalty than might have been given if the full authority of the master had been used. Libelant ought to have obeyed; and his willful disobedience brought upon him the consequences. Having refused to obey such lawful order, to enforce obedience, the imposition of the punishment specified in the statute became the absolute right of the master. Hence libelant cannot complain because he was afterwards put in irons and given bread and water. If, after his release, he was again sent to the mast, it is not a just cause for complaint. The putting of the stick under libelant's

knees was an act on the part of the master that cannot be approved of, but the weight of the evidence is that it caused no appreciable suffering for the time libelant remained in irons.

The learned judge of the court below must have so found, and, as his conclusion was supported by evidence, this court will not set it aside. Libelant's case is without substantial merit.

Decree affirmed.

