**UNITED STATES of America,
Plaintiff-Appellant.**

v.

**Terry Wayne DENSON, Stephen Orlando
and Joseph James Janish,
Defendants-Appellees.**

**In re UNITED STATES of
America, Petitioner.**

Nos. 78–2102, 78–2508.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1979.

Rehearing En Banc Granted
March 30, 1979.

1113

Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., Joel L. Selig, Dept. of Justice, Washington, D.C., for U. S. in 78–2102.

Robert C. Bennett, Houston, Tex., for Denson.

Michael Ramsey, Houston, Tex., for Orlando.

Michael A. Andrews, Houston, Tex., for Janish.

E. W. Barnett, B. J. Bradshaw, Leroy Jeffers, Houston, Tex., Tom Mills, Jr., Dal-

las, Tex., amicus curiae, for Nat'l Assn. of Criminal Defense Lawyers, Inc.

J. A. Canales, U. S. Atty., Houston, Tex., Dennis J. Dimsey, Drew S. Days, Asst. Atty. Gen., Civil Rights Div., John E. Huerta, Brian K. Landsberg, Dept. of Justice, Washington, D.C., for U. S. in both cases.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In No. 78–2508 the Government petitions for a writ of *mandamus* ordering the District Court to correct allegedly illegal sentences entered in this action on May 19, 1978. In No. 78–2102 the Government has filed a notice of appeal in an effort to challenge the same allegedly illegal sentences through the alternative procedure of a direct appeal. The substantive issue presented is whether 18 U.S.C.A. § 3651 authorizes a suspended sentence and probation for a conviction under 18 U.S.C.A. § 241 in a case in which the victim of the constitutional deprivation was killed. The procedural issue presented is whether a direct appeal or a petition for a writ of *mandamus* is the appropriate vehicle for the Government to challenge the sentences. After careful consideration of the record, the litigants' briefs, the briefs of *amici curiae*,[1] the litigants' oral arguments, and the applicable law, we dismiss the appeal as improper and deny the petition for a writ of *mandamus*.

## I.

We need not recount the evidence of this horrible crime adduced at this trial or at the prior state proceedings, since the issues presented here are legal and procedural. The relevant procedural history which we need consider to resolve the issues before us is not disputed.[2] On October 20, 1977, a federal grand jury returned a four-count indictment charging former Houston police officers Terry Wayne Denson, Stephen Orlando, Joseph James Janish, and Louis Glenn Kinney with violations of 18 U.S.C.A. §§ 241, 242, and 371. Count One of the indictment charged Denson, Orlando, Janish, and Kinney with conspiring to injure, oppress, threaten, and intimidate Joe Luna Torres, Jr., in the free exercise of his constitutional right not to be deprived of liberty without due process of law, in violation of 18 U.S.C.A. § 241. Count One averred that on May 6, 1977, Janish, Denson, Kinney, and Orlando struck Torres while he was handcuffed, and that Denson pushed Torres into the Buffalo Bayou in Houston. This Count further alleged that the conspiracy resulted in Torres' death. Count Two of the indictment charged that Denson, Orlando, Janish, and Kinney, while acting under color of law, willfully struck Torres, thereby depriving him of his constitutional right not to be deprived of liberty without due process of law, in violation of 18 U.S.C.A. § 242. Count Three alleged that Denson, aided and abetted by Orlando, Janish, and Kinney, willfully assaulted Torres by pushing him into the Buffalo Bayou, thereby depriving him of his constitutional right not to be deprived of liberty without due process of law, in violation of 18 U.S.C.A. §§ 2 and 242. Count Three further asserted that this act resulted in Torres' death. Count Four charged that Denson, Orlando, and Kinney conspired to violate 18 U.S.C.A. § 1510 by preventing one Carless E. Elliott from communicating information about violations of 18 U.S.C.A. §§ 241 and 242 to an agent of the Federal Bureau of Investiga-

---

1. The National Criminal Defense Lawyers Association and Individual Members of the Bar of the United States District Court for the Southern District of Texas were permitted to file briefs as *amici curiae*. The Honorable Ross N. Sterling, United States District Judge for the Southern District of Texas, notified this Court that he did not desire to appear in this proceeding. *See* Fed.R.App.P. 21(b).

2. Petition for Writ of *Mandamus* at 2–6; Brief for Respondents at 1.

tion, in violation of 18 U.S.C.A. § 371. On October 28, 1977, the Defendants entered pleas of not guilty to the charges against them. A jury trial commenced on January 23, 1978. On January 31, 1978, the District Court granted defendant Kinney's motion for a severance. On February 8, 1978, the jury found Defendants Denson, Orlando, and Janish guilty on Counts One and Two of the indictment and not guilty on Counts Three and Four.

Sentencing was held on March 28, 1978. On Count One of the indictment, the District Court sentenced each Defendant to ten years' imprisonment, suspended execution of that sentence, and ordered the Defendants placed on supervised probation for five years. On Count Two, the District Court sentenced each Defendant to one year's imprisonment. The District Court ordered the sentences on Counts One and Two to be served consecutively. After the sentence was announced, the following exchange took place between counsel for the United States and the District Court:

> Mr. McDonald: If I may be heard, there is some question about whether or not a probated sentence—
>
> The Court: I have resolved that question to my own satisfaction.
>
> We will be in recess.

On April 5, 1978, the Government filed a motion to correct sentence. In this motion, the Government contended that the District Court's orders suspending execution of its ten-year sentences and placing the Defendants on probation exceeded its authority under 18 U.S.C.A. § 3651. The Defendants filed a response to the Government's motion on April 11, 1978. In its memorandum and order dated April 17, 1978, the District Court denied the Government's motion. The District Court's reasoning is set forth in the following paragraph taken from its opinion:

> The language 'imprisonment (or imprisoned) for any term of years or for life' in 18 U.S.C. § 241 is identical to the language in 18 U.S.C. § 1111 (defining second degree murder), *id.* § 2031 (defining rape), and *id.* § 1201 (defining kidnap-

ping). The Administrative Office of the United States Courts reports that, nationwide, 4 convicted of second degree murder, 33 convicted of rape, and 6 convicted of kidnapping in 1977 received probation. Annual Report of the Director, Administrative Office of the United States Courts, 1977. In 1976, those receiving probation after conviction of these offenses were 2 (second degree murder), 20 (rape), and 5 (kidnapping), *id.*, 1976. In 1975, the numbers were 3 (second degree murder), 28 (rape), and 10 (kidnapping). *Id.*, 1975. Thus throughout the nation, the Federal Judiciary has interpreted the language 'imprisonment (or imprisoned) for any term of years or for life' to be consistent with the language of 18 U.S.C. § 3651 authorizing the granting of probation. Probation is prohibited when a punishment of death or life imprisonment is *mandatory*. *See United States v. Woods,* 484 F.2d 127, 139 (4th Cir. 1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875.

On May 17, 1978, the Government filed a notice of appeal from the April 17, 1978, order denying its motion to correct sentence. The notice of appeal indicated that the Government also intended to seek relief by way of a writ of *mandamus.*

On May 19, 1978, the District Court entered Judgment and Probation/Commitment Orders for Defendants Denson, Orlando, and Janish. These Orders effectuated the sentences which had been announced from the bench on March 28, 1978. The District Court also issued a second memorandum and order, the asserted purpose of which was

> to set forth upon the record the reasons which stem from the unprecedented procedural posture of this case, for the order, which is a part hereof, staying, to the extent that this court has power to stay, the running of all time periods pertaining to an appeal on the merits in this case until such time as the question of the validity of the sentence of this court has been finally determined.

In this Memorandum and Order, the District Court set forth an additional basis for the sentences it had imposed. After summarizing the procedures followed and the arguments of the litigants, the District Court stated:

> In an attempt to depoliticize what has become an almost intolerable situation of attempts to interfere with the independence of the court, this court has not heretofore articulated the most cogent reason for the sentences imposed. That reason is that the Government entered into a plea agreement with one of the former police officers not on trial in this case that if he would testify against those on trial here, he would be permitted to plead guilty to the same actions upon which the jury found these Defendants guilty under a different statute carrying a maximum penalty of one years' [sic] imprisonment and further that in his case the Government would recommend probation.

On May 23, 1978, the Government filed an amended notice of appeal from the order denying its motion to correct sentence and from the orders of probation entered on May 19, 1978. On May 30, 1978, Defendants Denson, Orlando, and Janish filed notices of appeal from the judgments entered against them. On July 14, 1978, the Government filed its petition for a writ of *mandamus.* This Court stayed the Defendants' appeal pending the outcome of the Government's attacks on the sentences.

## II.

We first consider whether 18 U.S.C.A. § 3651 authorizes a suspended sentence and probation for these convictions under 18 U.S.C.A. § 241.

### A.

■ Section 3651 authorizes federal courts to suspend imposition or execution of sentences only "[u]pon entering a judgment of conviction of any offense not punishable by death or life imprisonment."[3] Webster's Third International Dictionary (16th ed. 1971) and Black's Law Dictionary (Rev. 4th ed. 1968) both define "punishable" as meaning deserving of, liable of, or capable of being punished by law or right. *See also* Annotation, 35A Words and Phrases 171 (1963). The ordinary plain meaning of Section 3651, then, is that federal courts are without authority to suspend the imposition or execution of punishment and to grant probation to defendants, such as these Defendants, who are convicted of offenses for which death or life imprisonment may be imposed as a sentence.

■ The meaning of the phrase "any offense not punishable by death or life impris-

---

**3.** 18 U.S.C.A. § 3651 provides, in part:

Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

Probation may be granted whether the offense is punishable by fine or imprisonment or both. If an offense is punishable by both fine and imprisonment, the court may impose a fine and place the defendant on probation as to imprisonment. Probation, may be limited to one or more counts or indictments, but, in the absence of express limitation, shall extend to the entire sentence and judgment.

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

onment" in Section 3651, in our view, "is so self-evident that it hardly admits of argument." *United States v. Watkinds,* 6 F. 152, 161 (C.C.D.Or.1881). This case is appropriate for application of the "plain meaning" rule of statutory interpretation— "a most basic principle of statutory construction." *Tidewater Oil Co. v. United States,* 409 U.S. 151, 178, 93 S.Ct. 408, 424, 34 L.Ed.2d 375 (1972) (Stewart, J., dissenting). The United States Supreme Court explained this rule in one of its early cases:

> Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest.

*United States v. Wiltberger,* 18 U.S. 76, 96, 5 Wheat. 76, 5 L.Ed. 37 (1920). *See generally Raven v. Panama Canal Co.,* 583 F.2d 169 (5th Cir. 1978); *Barbee v. United States,* 392 F.2d 532 (5th Cir.), cert. denied, 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968). More recently, the Supreme Court has said of this rule: "[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966), *quoting, United States v. American Trucking Assns.,* 310 U.S. 534, 543, 60 S.Ct. 534, 84 L.Ed. 1345 (1940). We believe that the District Court has "depart[ed] from the plain meaning of [the] words [of Section 3651] in search of an intention which the words themselves [do] not suggest." *United States v. Wiltberger,* 18 U.S. at 96. We further believe that there is no ambiguity in the language of the statute that would justify such a departure. Nor do we find anything in the legislative history of the statute or in the general theory of probation which would warrant disregarding the natural meaning of the statutory language.

There is nothing in the legislative history of Section 3651 to suggest that its plain meaning is to be disregarded. For many years there were no federal statutes governing probation. Federal courts frequently "exercised a form of probation either by suspending sentence or by placing the defendants under state probation officers or volunteers." *United States v. Murray,* 275 U.S. 347, 354, 48 S.Ct. 146, 148, 72 L.Ed. 309 (1928). However, in *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (the *"Killitts"* case), the Supreme Court held that federal courts had no authority to suspend sentence. In response to this decision, Congress in 1925 passed the Federal Probation Act, 18 U.S.C.A. §§ 3651–3656.

The purpose of the Act was explained in *United States v. Murray,* 275 U.S. at 357–358, 48 S.Ct. at 149:

> The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience has shown that there was a real *locus poenitentiae* between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step, and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence.

The legislative history of the Federal Probation Act is extensive. *See, e. g.,* 54 Cong.Rec. 3637, 4373 (1917); 65 Cong.Rec. 9188, 11076–11078 (1924); 66 Cong.Rec. 5199–5201, 5204–5205 (1925); H.R.Rep.No. 423, 68th Cong., 1st Sess. (1924); H.R.Rep. No.1377, 68th Cong., 2nd Sess. (1925); Hearing on S. 1092 before a Subcommittee of the Committee on the Judiciary, United

States Senate, 64th Cong., 1st Sess. (1916); Hearing on S. 1042 and S. 1729 before a Subcommittee of the Committee on the Judiciary, United States Senate, 68th Cong., 1st Sess. (1924). This legislative record is discussed in great detail in *Roberts v. United States*, 320 U.S. 264, 268–270, 64 S.Ct. 113, 88 L.Ed. 41 (1943), and in *United States v. Murray*, 275 U.S. at 354–355, 48 S.Ct. 146, which need not be repeated here. Suffice it to say that our study of these legislative materials and of the judicial decisions considering them reveals nothing warranting an interpretation of Section 3651 differing from its natural meaning.

The legislative records appear to be of limited usefulness because no direct express statements concerning the phrase in question were made. During the legislative debates, only two references were made to the provision in the bill limiting the probationary powers of the federal courts to cases in which the defendants were convicted of crimes "not punishable by death or life imprisonment." During the House debates, Representative Hersey commented that the bill "does not apply to death sentences or life imprisonment." 65 Cong.Rec. 11076 (1924). And Representative Woodrum observed:

> [t]his bill goes further than any law I have seen in a State court. It has no limitation whatever on the age, gravity of the offense—except it must not be punished with death—or the number of times that the defendant may have been before that or some other court for violation of the laws of the United States.

66 Cong.Reg. 5205 (1925). Neither of these remarks is an attempt to define the phrase "not punishable by death or life imprisonment." Rather these remarks are shorthand, imprecise ways of referring to the statutory exception. Neither remark warrants disregarding the plain meaning of the statutory language.

4. Similarly, the history of Fed.R.Crim.P. 32(c) contains no indication that the phrase "offense not punishable by death or by life imprisonment" in that Rule is to be given any meaning other than its ordinary one. The Advisory Committee notes refer only to 18 U.S.C.A.

In addition, in amending Section 3651 in 1948, 1958, 1970, and 1972, Congress made no suggestion that it should be given a different interpretation. *See* H.R.Rep.No. 304, 80th Cong., 1st Sess., at A173–A174 (1947); P.L. 85–463, *reprinted in* [1958] U.S. Code Cong. & Admin.News, pp. 258, 2689–2691; P.L. 85–741, *reprinted in* [1958] U.S. Code Cong. & Admin.News, pp. 976–977, 3841–3843; P.L. 91–492, *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 1270–1271, 4324–4331; P.L. 92–293, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 166–167, 2257–2263.[4]

The current revision of the Criminal Code Reform Act of 1977 (S. 1437) is further indication that Section 3651 means what it says. Section 2101 of that bill would authorize the imposition of a sentence to a term of probation in all cases, unless the case involves a "Class A felony," or an offense for which probation has been expressly precluded, or the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense. The accompanying Senate Report provides that "subsection (a)(1) excludes Class A felony offenders from receiving a sentence of probation, thus excluding, *as does current law,* those offenders *subject to* a penalty of life imprisonment or death." S.Rep.95–905, 95th Cong., 1st Sess. 899 (1977) (emphasis added).

Nor do the basic principles underlying a sentence to probation require this Court to reject the plain meaning of Section 3651. The purpose of probation, as defined by the Supreme Court in *Roberts v. United States,* 320 U.S. at 272, 64 S.Ct. at 117, is

> to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court

§ 3651 for an explanation of the Rule. The predecessor of Rule 32, Rule I of the Criminal Appeals Rules of 1933, required imposition of sentences without delay except as provided by the Probation Act. *See* 292 U.S. at 661–662.

to impose the institutional punishment for his original offense in the event that he abuse this opportunity.

*See also generally United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928). Because probation is "an authorized mode of mild and ambulatory punishment,"[5] it is an inadequate sentence for the more serious criminal offenses. It was appropriate for Congress to authorize the federal courts to order probation only for those convicted of the less serious crimes, and it was reasonable for Congress to draw the line at those few offenses subject to a maximum punishment of death or life imprisonment.[6]

The legislative history of the 1968 amendment to 18 U.S.C.A. § 241 increasing its maximum punishment to life imprisonment in death cases indicates that Congress did not intend the federal courts to grant probation in such cases. Before 1968, the maximum punishment for a violation of 18 U.S. C.A. § 241 was 10 years' imprisonment and a $5,000 fine, even if death resulted. In that year Congress amended both 18 U.S. C.A. §§ 241 and 242 to provide for a maximum sentence of life imprisonment for violations resulting in death. *See* Pub.L. 90–

284, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 89–111, 1837–1867. The legislative history of these amendments indicates congressional dissatisfaction with maximum sentences of 10 years' imprisonment for violations of 18 U.S.C.A. § 241 resulting in death. The Senate Report provides:

[t]he maximum penalties [of 18 U.S.C. §§ 241 and 242] are inadequate for cases in which bodily injury or death has occurred. Section 241 provides a maximum penalty of a $5,000 fine or a 10-year prison sentence or both. . . .

The penalties prescribed in the bill are graduated in accordance with the seriousness of the results of violations, ranging from misdemeanor penalties when no one is harmed, to $10,000 fines and 10 years imprisonment when there is physical injury, and life imprisonment when death occurs.

S.Rep.No.721, 90th Cong., 1st Sess., p. 6 (1967), U.S.Code Cong. & Admin.News, [1968], p. 1841. During the Senate debate, Senator Hart stated:

H.R. 2516 increases the maximum penalties for violation of 18 United States Code 241 and 242. Currently the maxi-

---

5. *Cooper v. United States,* 91 F.2d 195, 199 (5th Cir. 1937). *See also Nix v. United States,* 131 F.2d 857, 858 (5th Cir. 1942), *cert. denied,* 318 U.S. 771, 63 S.Ct. 761, 87 L.Ed. 1142 (1943).

6. In addition to those federal criminal statutes carrying a *mandatory* sentence of life imprisonment, *see* note 9, *infra,* our research has identified the following federal statutes which by their terms provide for a maximum punishment of death or life imprisonment: 18 U.S.C.A. § 34 (destruction of aircraft, aircraft facilities, motor vehicles, or motor vehicle facilities, where death results); 18 U.S.C.A. § 241 (conspiracy to violate rights of citizens, where death results); 18 U.S.C.A. § 242 (deprivation of rights under color of law, where death results); 18 U.S.C.A. § 245 (forcible interference with federally protected activities, where death results); 18 U.S.C.A. § 794 (espionage); 18 U.S.C.A. § 844 (use of explosive materials, where death results); 18 U.S.C.A. § 1117 (conspiracy to murder); 18 U.S.C.A. § 1201 (kidnapping); 18 U.S.C.A. § 1658 (plunder of distressed vessel); 18 U.S.C.A. § 2031 (rape); 18 U.S.C.A. § 2113(e) (bank robbery, where death results); 18 U.S.C.A. § 2272 (destruction of vessel by owner); 18 U.S.C.A. § 2381 (treason); 21 U.S.

C.A. § 848 (engaging in continuing criminal enterprise); 42 U.S.C.A. § 2000e–13 (killing a person performing official functions under the Equal Employment Opportunity Act); 42 U.S. C.A. § 2272 (misuse of atomic energy); 42 U.S.C.A. § 2274 (communication of restricted data); 42 U.S.C.A. § 2275 (receipt of restricted data); 42 U.S.C.A. § 2276 (tampering with restricted data); 42 U.S.C.A. § 3631 (forcible interference with fair housing rights, where death results). In light of the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the death penalty provisions of these statutes would appear to be unconstitutional. *See* note 11, *infra.* In addition, various Articles of the Uniform Code of Military Justice carry a maximum punishment of death or life imprisonment. *See* 10 U.S.C.A. §§ 885, 890, 894, 899, 900, 901, 902, 904, 913, and 920. The question whether *Furman* applies to death sentences by military courts, where the asserted vagaries of juries are not present as in other criminal cases, was expressly reserved by the Supreme Court in *Schick v. Reed,* 419 U.S. 256, 260, 267, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974).

mum penalties under these two sections are too lenient where a death has occurred.

114 Cong.Rec. 318 (1968). *See also* 114 Cong.Rec. 9590 (1968) (Remarks of Rep. Ryan); 113 Cong.Rec. 22772 (1967) (remarks of Rep. Gilbert); 114 Cong.Rec. 669 (1968) (remarks of Sen. Scott). After the 1968 amendment, all defendants convicted of a violation of 18 U.S.C.A. § 241 resulting in death, except those in the present case, received sentences of life imprisonment. *See United States v. Guillette,* 547 F.2d 743 (2d Cir. 1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977) (sentences for two of three defendants reduced to 25 years' imprisonment on retrial); *United States v. Harvey,* 526 F.2d 529 (2d Cir. 1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976); *United States v. Robinson,* 503 F.2d 208 (7th Cir. 1974), *cert. denied,* 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427 (1975); *United States v. Pacelli,* 491 F.2d 1108 (2d Cir. 1974), *cert. denied,* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974).

Finally, the weight of relevant judicial authority supports our construction of Section 3651. Our research has revealed only one case, *State v. Taylor,* 151 Fla. 296, 9 So.2d 708 (1942) (*en banc*), in which a court was presented with the precise question at issue here. The *Taylor* case involved a state statute which, like Section 3651, authorized a trial court to grant probation to a defendant except in the case of an offense "punishable by death or life imprisonment." The Florida Supreme Court concluded: "[t]he word 'punishable' may be defined as 'capable of being punished by law or right.'" *Id.* at 708. The Florida court held that under the statute a trial court could not grant probation to a person convicted of second degree murder—an offense for which a term of life imprisonment could be imposed under state law—even though a

lesser term of incarceration was allowable. *See also United States v. Remling,* 548 F.2d 1274 (6th Cir. 1977); *Coon v. United States,* 360 F.2d 550 (8th Cir. 1966); *The Thrasher,* 173 F. 258 (9th Cir. 1909); *United States v. Carubia,* 377 F.Supp. 1099 (E.D.N.Y.1974); *United States v. Watkinds,* 6 F. 152 (C.C.D. Or.1881). *See generally* Annotation, 35A Words and Phrases 171–73 (1963) and cases cited.

*Taylor,* then, is directly contrary to the ruling of the District Court in the present case.[7] That case is particularly persuasive because "[w]hen Congress passed the Probation Law . . . it must be understood to have intended the system so established to be construed in the same sense as it had been in the states from which it was borrowed." *United States v. Lecato,* 29 F.2d 694, 695 (2d Cir. 1928) (Hand, J.), *quoted with approval in Birnbaum v. United States,* 107 F.2d 885, 887 (4th Cir. 1939). *Cf. Metropolitan Railroad Co. v. Moore,* 121 U.S. 558, 572, 75 S.Ct. 1334, 30 L.Ed. 1022 (1887).

Federal courts have attributed this meaning to the word "punishable" in somewhat analogous contexts. For example, in *In re Mills,* 135 U.S. 263, 10 S.Ct. 762, 34 L.Ed. 107 (1890), the Supreme Court considered a federal statute that established a United States court in the Indian Territory having jurisdiction over all offenses "not punishable by death or by imprisonment at hard labor." The Supreme Court concluded that "the words, 'punishable . . . by imprisonment at hard labor,' in the act . . embrace offenses which, although not imperatively required by statute to be so punished, may, in the discretion of the court, be punished by imprisonment in a penitentiary." *Id.* at 268, 10 S.Ct. at 764. A similar interpretation has been afforded the phrase "punishable by death or life imprisonment" in the Juvenile Delinquency Act, 18 U.S.

---

**7.** The dissent in *Taylor* argued that the statute should be liberally construed to exclude probation only for those offenses for which death or life imprisonment was mandatory. The dissent asserted that this view "squares with the interpretation of similar acts throughout the coun-

try and is in harmony with the prevailing thought with reference to their enforcement." 9 So.2d at 710. No authority was cited in support of this assertion, and, to our knowledge, none exists.

C.A. § 5031.[8] *See, e. g., United States v. Quinones,* 353 F.Supp. 1325, 1327 (D.P.R. 1973), *aff'd,* 516 F.2d 1309 (1st Cir. 1975), *cert. denied,* 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975). In *Coon v. United States,* 360 F.2d 550 (8th Cir.), *cert. denied,* 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed.2d 100 (1966), the United States Court of Appeals for the Eighth Circuit held a federal statute which provided that "an indictment for any offense punishable by death may be found at any time without limitation" encompassed any offense for which the death penalty may be imposed.

The District Court rejected the plain meaning of Section 3651 and adopted an interpretation that is supported by neither legal authority nor the practice in the federal judicial system. The District Court held that under Section 3651, "[p]robation is prohibited when a punishment of death or life imprisonment is *mandatory*" (emphasis

in the original).[9] The only legal authority cited by the District Court in support of its interpretation of Section 3651 is *United States v. Woods,* 484 F.2d 127 (4th Cir. 1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974). *Woods* does not support the proposition for which it was cited. The defendant in *Woods* was convicted of first degree murder under 18 U.S. C.A. § 1111. The United States Court of Appeals for the Fourth Circuit held that she could not be sentenced pursuant to 18 U.S. C.A. § 4208(a)(2), now 18 U.S.C.A. § 4205(b)(2), under which she would be eligible for parole at any time a parole board might determine. By its terms, Section 4208(a)(2) did not apply to any offense for which a mandatory penalty was provided.[10] The Court of Appeals held that because a life sentence under 18 U.S.C.A. § 1111 is mandatory,[11] the District Court was with-

---

**8.** The Act defined "juvenile delinquency" as "the violation of a law of the United States committed by a juvenile and not punishable by death or life imprisonment." 18 U.S.C.A. § 5031. It also provides:

A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.

18 U.S.C.A. § 5032.

These provisions rendering ineligible for treatment as juvenile delinquents those who had committed offenses against the United States punishable by death or life imprisonment were repealed by the 1974 amendments to the Act. See the Juvenile Justice and Delinquency Act of 1974, Pub.L. 93–415, *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 1267–1306, 5283–5340.

**9.** To our knowledge, the only federal statute that by its terms provides for a mandatory death penalty is 10 U.S.C.A. § 906 (spying in time of war), an Article of the Uniform Code of Military Justice.

The following federal statutes carry a mandatory penalty of life imprisonment: 10 U.S.C.A. § 918 (premeditated murder or felony murder by member of armed forces); 18 U.S.C.A. § 351(a) (congressional assassination); 18 U.S. C.A. § 1111(a) (first degree murder); 18 U.S. C.A. § 1114 (murder of officers and employees of the United States); 18 U.S.C.A. § 1116(a)

(murder of foreign officials, official guests, or internationally protected persons); 18 U.S.C.A. § 1651 (piracy under law of·nations); 18 U.S. C.A. § 1652 (citizens as pirates); 18 U.S.C.A. § 1653 (aliens as pirates); 18 U.S.C.A. § 1655 (assault on commander as piracy); 18 U.S.C.A. § 1661 (robbery ashore by pirates); 18 U.S.C.A. § 1716 (mailing injurious articles, where death results); 18 U.S.C.A. § 1751(a) (presidential assassination); 18 U.S.C.A. § 1992 (wrecking trains, where death results); 49 U.S.C.A. § 1472(i)(1)(B) (aircraft piracy, where death results); and 49 U.S.C.A. § 1472(n)(1)(B) (aircraft piracy outside special aircraft jurisdiction of the United States, where death results). The Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), would appear to have invalidated the death penalty provisions of these statutes except for 10 U.S.C.A. § 918, an Article of the Uniform Code of Military Justice and 49 U.S. C.A. §§ 1472(i)(1)(B) and (n)(1)(B). *See* note 6, *supra*; note 11, *infra.*

**10.** Section 4208(a)(2) provided that it "does not apply to any offense for which there is provided a mandatory penalty." 484 F.2d at 138.

**11.** In light of the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the death penalty provision of 18 U.S.C.A. § 1111(a) is unconstitutional. *United States v. Weddell,* 567 F.2d 767 (8th Cir. 1977); *United States v. Kaiser,* 545 F.2d 467 (5th Cir. 1977); *United States v. Watson,* 496 F.2d 1125 (4th Cir. 1973); *United States v. Woods,* 484 F.2d 127 (4th Cir. 1973), *cert. de-*

out authority to impose a sentence under Section 4208.

*Woods* dealt with 18 U.S.C.A. § 4208(a)(2); the case had nothing to do with 18 U.S.C.A..§ 3651. From its citation to page 139 of the *Woods* opinion, the District Court here apparently relied upon the following statement in that opinion relating to 18 U.S.C.A. § 3651: "We note that 18 U.S.C. § 3651 prohibits either probation or a suspended sentence for crimes punishable by life imprisonment, such as first degree murder . . . ." We believe that this language is entirely consistent with our construction of Section 3651. It does not support the proposition that probation is prohibited only for those convicted of a crime for which a life sentence is the mandatory punishment. The Court of Appeals was simply listing first degree murder as one of those crimes punishable by life imprisonment. In any event, this language is merely *obiter dictum*.[12] We believe that the *Woods* case actually undermines the District Court's interpretation of Section 3651, because it demonstrates that when Congress wants to withhold certain sentencing benefits only from those convicted of crimes with mandatory sentences, it does so explicitly.

Apparently, only one court, the Supreme Court of Colorado, has interpreted the word "punishable" in the same fashion as the District Court here. *See Jaramillo v. District Court,* 480 P.2d 841 (Colo.1971) (en banc). The defendant in *Jaramillo,* a 17-year-old youth, was charged with aggravated robbery, an offense carrying a possible punishment of "not less than four years, or for life." The Colorado Supreme Court considered the applicability of a state statute providing that any person under eighteen years of age who commits a felony shall be treated as a delinquent child, except for crimes of violence "punishable by death or life imprisonment." It ruled that the juvenile court had exclusive jurisdiction over this offense. The court stated that it had studied and "puzzled" over what it thought were all the applicable authorities and had found itself "as much in the dark as to the legislative intent as when [it] commenced." *Id.* at 842. The court concluded that " 'punishable by death or life imprisonment' does not embrace offenses which have a sentence of less than life imprisonment as a minimum and a maximum of either life imprisonment or death." *Id.* at 843.[13] In reaching its decision, the court in *Jaramillo* failed to include among the authorities cited *People v. Godding,* 55 Colo. 579, 136 P. 1011 (1913) (*en banc*), which interpreted an article of the Colorado Constitution defining the term "felony" to mean any criminal offense punishable by death or imprisonment in the penitentiary. The Court in *Godding* held that "punishable" meant "liable to punishment" or "which may be punished," and not "absolutely punishable." Thus, the court ruled, any offense which may be punished by imprisonment in a penitentiary is a "felony," even though in the discretion of the court a lighter sentence might be imposed.

We cannot resolve this case on the basis of the *Jaramillo* decision. Except for the decision of the District Court, it stands alone, against the great weight of authority, in its interpretation of the word "punishable." And it deals with the jurisdiction of a juvenile court, not with probation. Finally, it appears to be inconsistent with the earlier *Godding* decision. *But see Maddox v. People,* 178 Colo. 366, 497 P.2d 1263, 1264 (1973).

---

nied, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); *United States v. Freeman,* 380 F.Supp. 1004 (D.N.D.1974).

**12.** The court in *Woods* only mentioned the prohibition in Section 3651 to illustrate that it was not met with the problem which troubled the court in *Jones v. United States,* 419 F.2d 593 (8 Cir. 1969); namely, that if the sentence for armed robbery of a post office under 18 U.S. C.A. § 2114 were deemed mandatory, a de-

fendant found guilty could be placed on probation or given a suspended sentence but could not be made eligible for parole prior to service of one-third of the twenty-five year sentence.
484 F.2d at 139.

**13.** The Colorado Supreme Court reaffirmed the *Jaramillo* holding in *Maddox v. People,* 497 P.2d 1263, 1264 (1972), and in *Vigil v. People,* 484 P.2d 105, 106 (1971).

The District Court also relied upon statistics derived from recent Annual Reports of the Administrative Office of the United States Courts.[14] These statistics, according to the District Court, showed that in 1975, 1976, and 1977, probation was granted to 111 defendants convicted of second degree murder (18 U.S.C.A. § 1111), rape (18 U.S.C.A. § 2031), and kidnaping (18 U.S.C.A. § 1201), violations of which are punishable by imprisonment for any term of years or for life.[15] The District Court concluded these statistics showed that "throughout the nation, the Federal Judiciary has interpreted the language 'imprisonment (or imprisoned) for any term of years or for life' to be consistent with the language of 18 U.S.C.A. § 3651 authorizing the granting of probation." We cannot agree. In the first place, evidence of judicial practice is not controlling as a matter of law. The Supreme Court established long ago that federal courts could not, by practice, affect their authority to grant probation. *Ex parte United States,* 242 U.S. 27, 50–53, 37 S.Ct. 72, 61 L.Ed. 129 (1916). Secondly, these statistics fail to demonstrate a general practice among the federal courts of granting probation to defendants convicted of offenses punishable by death or life imprisonment. Of the 111 defendants assertedly charged with second degree murder, rape, or kidnaping for the years in question, 37 were sentenced under the Juvenile Delinquency Act, 18 U.S.C.A. § 5301 et seq.[16] and 25 were sentenced under the Youth Corrections Act, 18 U.S.C.A. § 5005 et seq.[17] The authority of federal courts to grant probation pursuant to these statutes is in addition to their authority under 18 U.S.C.A. § 3651. The specific sentencing procedures of these Acts take precedence over the general limitation on the use of probation in 18 U.S.C.A. § 3651. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *Morton v. Mancari,* 417 U.S. 535, 550–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Bulova*

**14.** In 1940, administration of the probation system was transferred from the Attorney General to the Administrative Office of the United States Courts under the provisions of an Act passed on August 7, 1939. *See* 53 Stat. 1223, 1225. The General Counsel's Office of the Administrative Office of the United States Courts serves as legal counsel for the federal probation officers, who in turn are often relied upon by the federal district courts in sentencing matters. The General Counsel's Office was not consulted prior to the imposition of the sentences in this case, and it has never issued an opinion interpreting 18 U.S.C.A. § 3651 in the way the District Court has.

**15.** We have examined the pertinent pages of these reports. According to these reports, for fiscal year 1975, four defendants convicted of *first* degree murder were given probation, for fiscal year 1976, two defendants convicted of that offense were given probation, and, for fiscal year 1977, two defendants convicted of that offense were given probation. As indicated, *see* notes 6 and 9, *supra,* first degree murder carries a *mandatory* life sentence; thus probation for a defendant convicted of first degree murder is not legally possible under 18 U.S.C.A. § 3651, even under the construction of that statute advanced by the Defendants and the District Court. The fact that eight Defendants reportedly convicted of first degree murder in fiscal years 1975, 1976, and 1977 were given probation should have alerted counsel for the Defendants and the District Court of the possibility that some of the defendants re-

flected in the charts were given probation under the special sentencing provisions of the Juvenile Delinquency Act of the Youth Corrections Act, or were in fact convicted of related offenses not punishable by life imprisonment or death. The Defendants and the District Court have cited the statistics for the offenses of second degree murder, kidnapping and rape— which on their face appear to support their interpretations of Section 3651—but have omitted the statistics for first degree murder printed one line above those for second degree murder—which on their face appear to be directly at odds with their interpretations of Section 3651.

**16.** The Juvenile Delinquency Act provides that "[t]he court may suspend the adjudication of delinquency or the disposition of the delinquent on such conditions as it deems proper, *place him on probation,* or commit him to the custody of the Attorney General." 18 U.S.C.A. § 5037(b) (emphasis added).

**17.** The Youth Corrections Act defines "youth offender" as "a person under the age of twenty-two years at the time of conviction." 18 U.S.C. § 5006(d). The Act provides: "[i]f the court is of the opinion that the youth offender does not need commitment, *it may suspend the imposition or execution of sentence and place the youth offender on probation.*" 18 U.S.C.A. § 5010(a) (emphasis added).

*Watch Co. Inc., v. United States,* 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961).

Of the remaining 49 defendants, 45 were convicted of related offenses not punishable by life imprisonment or death. Thus, all but four of the 111 defendants given probation were either found guilty of an offense not punishable by life imprisonment or death or were sentenced under the special sentencing procedures of the Juvenile Delinquency Act or the Youth Corrections Act. The fact that in the years 1975, 1976, and 1977, four defendants convicted of federal crimes punishable by life imprisonment were given probation, purportedly under 18 U.S.C.A. § 3651, is hardly evidence of a general practice among federal courts. The Government has informed us that three of these four defendants were women with mental problems who were convicted of kidnapping and that the fourth defendant was an American Indian charged with second degree murder on an Indian reservation. In none of these four cases was 18 U.S.C.A. § 3651 actually raised as an objection to probation.[18]

■ The final justification advanced by the District Court in support of its sentences to probation is the plea arrangement entered into by the Government with a former Houston police officer involved in the death of Joe Luna Torres, Jr.[19] In exchange for his testimony the Government agreed to allow this officer to plead to a misdemeanor offense of conspiracy to violate 18 U.S.C.A. § 242 and to recommend that he be placed on probation. But the District Court was not authorized by Section 3651 to grant probation to these Defendants, and no plea arrangement entered into by the United States could justify placing them on probation. It is inappropriate for the sentencing court to attempt to harmonize the fate of convicted defendants with the fate of witnesses with whom the

Government has struck a bargain. The executive has the discretion to refrain from even prosecuting lawbreakers as part of its efforts at investigation and law enforcement. *But cf. United States v. Johnson,* 577 F.2d 1304 (5th Cir. 1978). Certainly, a sentencing judge is not required to afford the same terms to the convicted defendant as were afforded to the cooperating individual. Many cooperating individuals are not even prosecuted, and if uniform treatment were required, defendants in such cases could maintain that they ought not be prosecuted at all. In the logical extreme, the District Court's approach would lead to such a contention which, of course, would be absurd. The authority of the federal courts to order probation comes from Congress, not plea bargains.

■ The Defendants contend that 18 U.S.C.A. § 3651 prohibits probation only in those cases in which death or life imprisonment was the actual sentence imposed. But the applicability of Section 3651 does not depend upon whether death or life imprisonment is actually imposed as the sentence in a particular case. If it did, a district court would be able to determine the applicability of the statutory bar by the sentence it imposed. The potential for such manipulation would defeat the purpose of the statute.

Apart from the statistics compiled by the Administrative Office of the United States Courts discussed above, the only authority cited by the Defendants in response to the Government's motion to correct sentence is the following language from *United States v. Bernett,* 123 F.Supp. 841, 844 (D.Md. 1954):

> I take it to be clear enough under the Probation Law that at the time of imposing a sentence (other than one for death or life imprisonment) . . . the sentence may include probation . . . .

**18.** Most of this information was obtained from the Administrative Office of the United States Courts. The Department of Justice verified and supplemented the information received from the Administrative Office by consulting with the appropriate district court clerks and, when necessary, United States Attorneys. At

the request of the Administrative Office, the names of these defendants have not been revealed.

**19.** The District Court described this as "the most cogent reason for the sentence imposed."

One may infer from this language that the District Court in *Bernett* believed that probation was precluded only in those cases in which a sentence of death or life imprisonment was actually imposed. But this language is *obiter dictum.*[20] This Court should not resolve this case on the basis of this *dictum* particularly when it conflicts with the express language of the Congress.

We conclude, therefore, that the orders of the District Court suspending execution of sentence on Count One of the indictment and placing the Defendants on probation exceeded its authority under 18 U.S.C.A. § 3651.

### III.

Next, we must consider whether the direct appeal or the petition for a writ of *mandamus* is the appropriate process by which the Government may challenge these sentences. Since we conclude that the attempted appeal is improper and that the petition is proper, we dismiss the attempted appeal in No. 78–2102. However, for the reasons discussed below, we exercise our discretion and decline to issue the writ.

### A.

■ The long established rule has been that the Government cannot appeal in a criminal case without the express authorization of Congress. *See generally United States v. Blasco,* 581 F.2d 681, 683 (7th Cir. 1978). The instances in which the Government may bring a criminal appeal have been specifically enumerated in the Criminal Appeals Act, 18 U.S.C.A. § 3731.[21] The United States Supreme Court traced the uneven course of Section 3731 in *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), and concluded that Congress "intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *Id.* at 337, 95 S.Ct. at 1019. Still, Section 3731 cannot be construed to authorize a Government appeal from any and every District Court order. To so construe Section 3731 would do violence to Congress' express intention to carefully identify and define the situations in which the Government might appeal. We agree with counsel for the Government, who quite

---

**20.** The defendant in *Bernett* was convicted of two armed robberies and interstate transportation of stolen money. He was sentenced to consecutive terms of 15 and 20 years' imprisonment for the robberies, and 5 years' imprisonment on the remaining offenses, to run concurrently with the 15 year sentence. After serving part of his prison term, the defendant moved the court to modify the sentence by suspending the 20 year sentence and placing him on probation. The District Judge ruled that even if he had the authority to suspend sentence and grant probation (an issue which he expressly declined to decide), the circumstances of the offenses and the defendant's subsequent conduct were such that suspension of the sentence and probation would not be in the public interest. *Bernett,* then, had nothing to do with the issue presently before this Court. In fact, the language quoted above and upon which the defendants rely was preceded by the following sentence in the *Bernett* opinion:

> In order to pinpoint the precise question presented it may be helpful to exclude various judicial decisions under the Probation Law which on their facts *do not present the particular situation here involved.*

123 F.Supp. at 844 (emphasis supplied).

**21.** 18 U.S.C.A. § 3731 provides:

Appeal by United States

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title.

The provisions of this section shall be liberally construed to effectuate its purposes.

candidly admitted at oral argument that these judgments and orders of sentence are in no material way even related to the types of orders set out in Section 3731. *See generally Sanabria v. United States*, 437 U.S. 54, 61, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Jaramillo*, 510 F.2d 808 (8th Cir. 1975); *United States v. Beck*, 483 F.2d 203 (3d Cir.), *cert. denied*, 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1973); *United States v. Greely*, 134 U.S.App.D.C. 196, 413 F.2d 1103 (1969); *United States v. Gibbs*, 285 F.2d 225 (9th Cir. 1960); *United States v. Lane*, 284 F.2d 935 (9th Cir. 1960). *See also* Sen.Rep. 91–1253, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 5804, 5848–49.

There still may be one other means by which the Government can bring a criminal appeal. 28 U.S.C.A. § 1291 establishes the jurisdiction of the United States Courts of Appeals to hear appeals from "all final decisions" rendered by the United States District Courts.[22] *See generally* 9 Moore's Federal Practice ¶¶ 110.06–110.25; Wright, Miller & Cooper, 15 Federal Practice and Procedure §§ 3905–3919. In *Carroll v. United States*, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1956), the United States Supreme Court observed:

> [C]ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291, without regard to the limitations of 18 U.S.C. § 3731, just as in civil litigation orders of equivalent distinctness are appealable on

the same authority without regard to the limitations of 28 U.S.C. § 1292.

*Id.* at 403, 77 S.Ct. at 1338 (note omitted). *See Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See also Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Matter of Special February 1977 Grand Jury*, 581 F.2d 1262, 1263 (7th Cir. 1978), *citing In re Gopman*, 531 F.2d 262 (5th Cir. 1976). The Supreme Court emphasized the rareness of such orders. *Carroll v. United States*, 354 U.S. at 403, 77 S.Ct. 1332. The order appealed from must be severable from, and collateral to, the main case; the right involved must be so important that to deny review would be inappropriate; the issue presented must be such that postponing review until the final termination of the case would cause the irreparable loss of the valued right. *See United States v. Lansdown*, 460 F.2d 164, 170–71 (4th Cir. 1972). The only decisions in which courts have applied the *Carroll* doctrine have involved orders fulfilling these requisites, for example, orders setting the amount of bail and orders for the return of seized property. *E. g., Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); *United States v. Lansdown*, 460 F.2d 164 (4th Cir. 1972); *United States v. Fields*, 425 F.2d 883 (3d Cir. 1970); *United States v. Filing*, 410 F.2d 459 (6th Cir. 1969). Given the federal courts' history of disfavoring criminal appeals by the Government, and guided by the principles of this line of cases, we cannot classify the sentencing orders challenged here as coming within the *Carroll* doctrine. The sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction. Therefore, we hold that the orders of sentence and probation are not possessed of "sufficient independence" from the criminal case to permit a Government appeal under 28 U.S.C.A. § 1291. *See generally United States v. Peachtree Na-*

---

**22.** 28 U.S.C.A. § 1291:

> Final decisions of district courts
>
> The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the Unit-

> ed States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

*tional Distributors,* 456 F.2d 442 (5th Cir. 1972); *United States v. Wilson,* 440 F.2d 1103 (5th Cir. 1971); *Yeloushan v. United States,* 313 F.2d 303 (5th Cir. 1963); *United States v. Koening,* 290 F.2d 166 (5th Cir. 1961); *Zacarais v. United States,* 261 F.2d 416 (5th Cir. 1959); *United States v. Williamson,* 255 F.2d 512 (5th Cir. 1958).

There being no statutory authority permitting the Government to appeal these sentences, the attempted appeal in No. 78-2102 is dismissed. *Compare United States v. Norton,* 539 F.2d 1082 (5th Cir. 1976); *United States v. Mehrtens,* 494 F.2d 1172 (5th Cir. 1974), *cert. denied, sub nom., Bowdach v. United States,* 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145 (1974).

### B.

The procedural inquiry therefore narrows to whether the error complained of may be corrected by the issuance of a writ of *mandamus.* "Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. . . . As extraordinary remedies, they are reserved for really extraordinary causes." *Ex parte Fahey,* 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947). Thus, our task is to determine whether the petition before us presents an extraordinary cause.

"[Mandamus] can, of course, not be availed of to correct a mere error in the exercise of conceded judicial power." *De-Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). However, the Government contends that here the District Court exceeded its judicial power to sentence. While application is often difficult, the conceptual standards applied to petitions for extraordinary relief are well-settled:

The Writs of Mandamus and Prohibition are granted sparingly. Such writs are 'reserved for really extraordinary causes,' *Ex parte Fahey,* 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041, 2043 (1947), and should be issued only when the right to such relief is 'clear and indisputable.' *United States ex rel. Bernardin v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286,

43 L.Ed. 559, 561 (1899). To some extent they are supervisory in nature and are used to 'confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943). They are not to be used as a substitute for an appeal, or to 'control the decision of the trial court' in discretionary matters. *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106, 111 (1953).

*In re Estelle,* 516 F.2d 480, 483 (5th Cir. 1975), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380 (1976), *quoting Miller v. Conally,* 354 F.2d 206, 208 (5th Cir. 1965). *See also Will v. United States,* 389 U.S. 90, 95–99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *United States v. United States District Court,* 506 F.2d 383 (5th Cir. 1974); *Carter v. Seamans,* 411 F.2d 767 (5th Cir. 1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953 (1970).

We believe that the error of the District Court here is correctable by a writ of *mandamus.* "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). *See also Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 352, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *Schlagenhauf v. Holder,* 379 U.S. 104, 109–10, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Note, *Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv.L.Rev. 595 (1973). It is well-settled that the Government may properly seek a writ of *mandamus* to correct an illegal sentence imposed by a District Court. *Ex parte United States,* 242 U.S. 27, 39–40, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Jackson,* 550 F.2d 830, 831 (2d Cir. 1977); *United States v. Norton,* 539 F.2d 1082, 1083 (5th Cir. 1976), *cert. denied,* 429 U.S.

1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); *United States v. United States District Court*, 509 F.2d 1352 (9th Cir. 1975), *cert. denied sub nom., Roselli v. United States*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975); *United States v. Regan*, 503 F.2d 234 (8th Cir. 1974), *cert. denied sub nom., Tocco v. United States*, 420 U.S. 1006, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975); *United States v. Mehrtens*, 494 F.2d 1172, 1174 (5th Cir. 1974); *cert. denied sub nom., Bowdach v. United States*, 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145 (1974); *United States v. McGarr*, 461 F.2d 1 (7th Cir. 1972); *United States v. Gibbs*, 285 F.2d 225, 226 (9th Cir. 1960); *United States v. Lane*, 284 F.2d 935 (9th Cir. 1960). This Court is therefore authorized by the All Writs Act, 28 U.S.C.A. § 1651 to issue a writ of *mandamus*[23] to correct the illegal sentences imposed by the District Court.[24]

### C.

█ To conclude, as we have, that the District Court exceeded its authority under Section 3651 and that *mandamus* is the appropriate remedy does not end the matter. It must be remembered that we deal here with one of the extraordinary writs. We are not duty-bound to issue the writ. The procedural issue further narrows, therefore, to whether we shall exercise our discretion to grant the petition. This we decline to do.

Extraordinary writs, like equitable remedies, may be granted or withheld in the sound discretion of the petitioned court. *Ex parte Peru*, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1942). The proponent petitioner always has "the burden of showing that [the] right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953). *See also Kerr v. United States*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). In *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) (notes omitted), this Court emphasized the extraordinariness of *mandamus*:

It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases. Though it is a legal remedy, it is largely controlled by equitable principles and its issuance is a matter of judicial discretion. Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. In connection with the last requirement, it is important to bear in mind that mandamus does not supersede other remedies but rather comes into play where there is a want of such remedies. Admittedly the alternative remedy must be adequate, i. e., capable of affording full relief as to the very subject matter in question.

█ When we examine the facts in the instant case, we do not find a compelling

---

**23.** We do not believe that formal issuance of the writ would be necessary to ensure the District Court's compliance. A copy of this Court's opinion issued as a mandate would be sufficient. *Cf. United States v. Norton*, 539 F.2d at 1083 n.2; *United States v. Mehrtens*, 494 F.2d at 1176 n.2.

**24.** Requiring the District Court to resentence the Defendants in accordance with the requirements of 18 U.S.C.A. § 3651 would not violate the Double Jeopardy Clause of the Fifth Amendment, even if the sentences the Defendants must serve are thereby increased. Resen- tencing to correct an illegal sentence does not constitute double jeopardy, even if the corrected sentence is more onerous than the original one. *Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *United States v. Thomas*, 474 F.2d 1336 (2d Cir. 1973), *affirming*, 365 F.Supp. 173, 174 (E.D.N. Y.1972); *Llerena v. United States*, 508 F.2d 78 (5th Cir. 1975); *Caille v. United States*, 487 F.2d 614 (5th Cir. 1973); *Orrie v. United States*, 302 F.2d 695, 697 (8th Cir. 1962). *See generally United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

need for the writ. Indeed, we find a more compelling case for declining to exercise our discretion over the issuance of the writ. We decline to issue a writ of *mandamus* for several reasons which we find compelling, when taken together.

First, as we have already discussed, the Government here seeks by mandamus to obtain that which it cannot obtain by direct appeal: appellate review of these sentences. For the Government, there is no direct appeal from these sentences. Yet, everything is reviewable in its own way. And, *mandamus* is a potential remedy. Still, we must be cognizant of the rule that *mandamus* is not to be used as a substitute for an appeal.

Second, the District Judge noted in his sentence that he was "mindful that two juries have heard the facts concerning this incident and have failed to find these defendants intended to take the life of the victim" in determining the penalty to be assessed. Though neither the successive prosecutions nor the requirement of resentencing on remand would offend the Double Jeopardy Clause, we believe that exercising our discretion to grant the writ and require resentencing would be somewhat antithetical to the notions of finality inherent in that guaranty. *But see United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1968); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

> The extraordinary writ of mandamus, which is rarely granted in civil cases, is even less frequently issued in criminal proceedings, principally because of policy reasons based upon the defendant's rights under the Speedy Trial and Double Jeopardy provisions of the Constitution.

*United States v. Weinstein*, 511 F.2d 622, 626 (2d Cir. 1975), *citing Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). *Cf. United States v. Golay*, 560 F.2d 866 (8th Cir. 1977); *United States v. Hughes*, 413 F.2d 1244 (5th Cir. 1969); *Coates v. Maryland*, 436 F.Supp. 226

(D.Md.1977). Were we to issue the writ here, the District Court would be obliged to resentence these Defendants. If the District Court should be of the opinion that the severity of the original sentence matrix was still appropriate to these Defendants and their crime, then the District Court would be required somehow to translate metaphysically the severity of the probation sanction into a sanction of custody for a term of years of equal severity. Converting the five year period of probation and the Damoclean threat of a full ten years of confinement into a simple period of custody could only be a rough approximation at best. To be sure something would be lost in the translation. Though this would not offend the letter of the Double Jeopardy Clause, *see note 24, supra,* it does, indeed, run contrary to the spirit of that guarantee and we are reluctant to upset the finality of the *status quo.*

Third, we deal here with an area in which the District Court should be afforded great deference by the reviewing court. The District Court in the instant case had the following sentence options upon return of guilty verdicts against the Defendants for violating 18 U.S.C.A. § 241: (1) a fine of up to $10,000; (2) imprisonment of up to ten years; (3) a fine of up to $10,000 and imprisonment up to ten years; (4) imprisonment for any terms of years; (5) life imprisonment; or (6) probation for alternatives (1), (2), (3) and (4). The District Court eliminated the first five possibilities and chose probation. The choice of probation was made after a two and one-half week trial and receipt by the District Court of extensive pre-sentencing reports concerning the Defendants.

It should be pointed out that the District Court could have sentenced the Defendants to one year imprisonment each for violating 18 U.S.C.A. § 241 and then ordered the sentence to run concurrently with the other one year term received by Defendants for violating 18 U.S.C.A. § 242. By placing the Defendants on probation for five years, the trial judge actually imposed a more severe sentence than he might have imposed.

There is a long line of cases holding that federal trial judges have wide discretion in sentencing. *See, e. g., United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971); *United States v. Cardi,* 519 F.2d 309 (7th Cir. 1975); *United States v. McCord,* 466 F.2d 17 (2d Cir. 1972); *United States v. Stubblefield,* 408 F.2d 309 (6th Cir. 1969). In addition, there are numerous decisions upholding the right to exercise discretion by judges in their sentencing functions. *See, e. g., Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *United States v. Flores,* 540 F.2d 432 (9th Cir. 1976); *United States v. Masthers,* 176 U.S.App.D.C. 242, 539 F.2d 721 (1976); *United States v. Saunders,* 435 F.2d 683 (5th Cir. 1970); *Miller v. Gladden,* 341 F.2d 972 (9th Cir. 1965). In *Williams,* the Supreme Court observed: "Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear." 399 U.S. at 243, 90 S.Ct. at 2023.

Indeed, not only do appellate courts expect trial courts to exercise their discretion, appellate courts demand that discretion be exercised. *Briscoe v. United States,* 129 U.S.App.D.C. 146, 391 F.2d 984 (1968). As a general rule, the District Court's sentence will be disturbed on appeal only if it can be clearly shown that the sentencing court abused its discretion. *See, e. g., United States v. Willard,* 445 F.2d 814 (7th Cir. 1971); *Cassidy v. United States,* 304 F.Supp. 864, *aff'd,* 428 F.2d 585 (8th Cir. 1970); *United States v. L'Aquaris,* 418 F.Supp. 887 (D.Okl.1976). *See generally,* ABA Project On Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, § 3.4 (1968); ALI Model Penal Code § 7.01 (1962); *Blake, Appellate Review of Criminal Sentences in the ·Federal Courts,* 24 Kan.L.Rev. 279 (1976).

Appellate courts have also emphasized the significance of the information available· to the District Court concerning the defendants which aids in determining the appropriate sentence. In *United States v. McCoy,* 139 U.S.App.D.C. 60, 64, 429 F.2d 739, 743 (1970), the United States Court of Appeals for the District of Columbia said: "In theory, the trial judge is in a peculiarly good position to determine the appropriate ,sentence because he will have heard the evidence at trial, observed the demeanor of the defendant, absorbed the information in the pre-sentence report, and heard any further personal information or assurances offered by the defendant's allocution." In *United States v. Dancy,* 166 U.S.App.D.C. 399, 404, 510 F.2d 779, 784 (1975), the same Court explained that appellate review of sentences "simply aims to guarantee that the trial judge's sentencing discretion is actually exercised and that the information relied upon by him is not unreliable, improper, or grossly insufficient." As a matter of fact, sentencing judges have been given a wide discretion as to the types of information that they may use in determining the kind of punishment to be imposed. *See, e. g., Saros v. Richardson,* 435 F.2d 821 (9th Cir. 1971).

The District Court in this case had an abundant amount of information available to assist it in determining the appropriate sentences for the Defendants. The District Judge presided over a two and one-half week trial. He received in-depth presentencing reports about the Defendants.. The District Judge himself referred to the information made available to him concerning the sentences for the Defendants. He noted that he had "been assisted in this [consideration of sentence] by thoughtful memoranda from counsel, from the professionals in the probation office, and letters from many interested citizens."

█ At one point, the Government had urged that the District Court eliminate both the suspension of execution of the ten years' sentence and the five years' period of probation on Count One. The District Court declined to follow this suggestion which, in effect, would have reinstated the sentence of ten years' imprisonment on Count One. At oral argument, the Government very appropriately abandoned this untenable position. Of course, though this

Court has the authority in a *mandamus* proceeding to require that the District Court impose a legal sentence which is within its statutory authority, we could not direct that the District Court enter a particular sentence even if we had decided to issue writ.

> On direct appeal, a court of appeals has broad authority to 'modify, vacate, set aside or reverse' an order of a district court, and it may direct such further action on remand 'as may be just under the circumstances.' 28 U.S.C. § 2106. By contrast, under the All Writs Act, 28 U.S.C. § 1651(a), courts of appeals may issue a writ of mandamus only when 'necessary or appropriate in aid of their respective jurisdictions.'

*Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978). Therefore, even if we were convinced that we should issue the writ, we would be properly restrained by the general rule that the writ of *mandamus* may not serve as a substitute for a direct appeal, but rather is traditionally utilized in the federal courts only " 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), *quoting Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). *See also ICC v. United States ex rel. Members of Waste Merchants' Assn.,* 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112 (1922); *Walker v. Brooks,* 251 F.2d 555 (6th Cir. 1958). *Cf. United States v. Williams,* 446 F.2d 486 (5th Cir. 1971). Thus, we could not resentence these Defendants ourselves or direct a particular resentence be entered by the District Court.

After a successful prosecution involving multiple counts, it becomes the unique duty of the District Court to compose and impose the sentencing matrix appropriate to each conviction and each defendant. But the sentencing duty is not a fragmented undertaking. In cases involving multiple convictions, the District Court composes the sentence on each guilty count with an eye toward the sentences to be imposed on the other counts for which the defendant has been convicted. Here, the sentences imposed on Count One and Count Two reflected the District Court's conclusion that the Defendants should be placed on probation for five years after a one year period of confinement. The sentences further reflected the District Court's conclusion that these Defendants ought to be subjected to the considerable threat of extensive confinement should they not justify the confidence reposed in them by the grant of probation. These various contingencies were considered together by the District Court and provided for in this sentencing matrix. No single portion of the sentencing matrix could be upset without upsetting the matrix itself. *Cf. United States v. Kindrick,* 576 F.2d 675 (5th Cir. 1978). While we could mandate that the matrix be upset, we could do no more than direct the District Court to devise a sentence consistent with our conclusions regarding probation. Conceivably, the Government's efforts at seeking more severe sentences could be frustrated even if we issued the writ. As we have noted, the District Court has detailed the reasons for imposing this sentencing matrix. Though we have no way of knowing, if we were to issue the writ and the District Court was still firmly convinced that the optimum period of confinement was one year, then the District Court could simply sentence these Defendants to one year's imprisonment on Count One to run concurrently with a one year's sentence on Count Two. The five year probation would be eliminated. In that event, the Government's efforts to challenge the sentences as being too lenient would be for naught. The Government has conceded the possibility of this scenario and has acknowledged, quite candidly and correctly, that such a sentence would be beyond the pale of our review. Such a possibility of the writ being rendered a futile gesture may be weighed when considering the equities of its issuance.

Of course, the sentence imposed here was beyond the discretion of the District Court

in that it was not authorized under 18 U.S. C.A. § 3651. Being illegal, such sentences ought be vacated, as a general rule. The only point we wish to make here is that sentencing is firmly committed, at least initially, to the District Courts. *See generally,* e. g., *United States v. Williams,* 446 F.2d 486 (5th Cir. 1971).

Fourth, and most importantly, we believe that granting the petition will work a substantial hardship on the Defendants. The Government in this case is attempting to use *mandamus* to obtain appellate review of a sentence with which it is not satisfied. As we have noted, the writ of *mandamus* is an extraordinary remedy available only in rare cases and courts will proceed with great caution before granting such relief. In *United States v. Carter,* 270 F.2d 521 (9th Cir. 1959), the United States Court of Appeals for the Ninth Circuit refused to set aside an award of probation by a trial court to persons convicted under 26 U.S.C.A. § 7237(d) (repealed in 1970) which specifically prohibited the granting of probation because "the setting aside of the district court orders would work a substantial hardship on the affected parties." *Id.* at 524.

It is within the sound discretion of this Court to refuse to issue a writ of *mandamus,* even though we have decided that probation is not available to a person convicted under 18 U.S.C.A. § 241 when death results. This case, under the facts material to the issue of punishment, is one in which *mandamus* should not issue. Two of the three Defendants below have been vigorously prosecuted twice by separate sovereigns, and two juries have found an absence of intent to cause death. Their records, save for the convictions below, are impeccable, as is borne out by the record of the sentencing hearing below. They are excellent candidates for probation. To utilize *mandamus* to exclude them from the benefits of probation would work a substantial hardship on the affected parties and thwart the aims of the sentencing judge, who assessed punishment after hearing all the evidence on the merits of the case and examining all available material relevant to sentencing. *See generally,* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, Standards Relating to Probation, Standards Relating to Appellate Review of Sentences (1968). These Defendants have been told after such prosecutions and investigations that they would be subjected to one year's incarceration to be followed by five years supervision. They prepared to surrender for such incarceration. They have adjusted their lives to the punishment assessed. They have sought and secured employment opportunities consistent with the term of incarceration imposed. To withdraw the probation granted for which the Defendants and their families have prepared themselves would work a substantial hardship on the Defendants and their families. *Mandamus* should not issue "to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit." *United States v. Carter,* 270 F.2d at 524, *quoting Duncan Townsite v. Lane,* 245 U.S. 308, 311, 38 S.Ct. 99, 62 L.Ed. 309 (1917). *But compare United States v. Lane,* 284 F.2d 935 (9th Cir. 1960). Therefore, we exercise our discretion to deny the Government's petition for a writ of *mandamus.*

## IV.

In summary: the appeal in No. 78–2102 is DISMISSED; the petition for a writ of *mandamus* in No. 78–2508 is DENIED.[25]

---

**25.** Given our results, we need not reach the various motions pending before the Court: (1) Appellees' Motion to Dismiss the Appeal in No. 78–2102, and (2) Motion of the United States to Treat Petition for Writ of *Mandamus* as Appeal Brief.

Of course, though this Court has authority in a *mandamus* proceeding to require the District Court to impose a legal sentence, we could not direct a particular sentence. *See,* e. g., *Roche v. Evaporated Milk, Ass'n,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1934); *ICC v. United States ex rel. Members of Waste Merchant's Ass'n,* 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112 (1922); *Walker v. Brooks,* 251 F.2d 555 (6th Cir. 1958). *Cf. United States v. Williams,* 446 F.2d 486 (5th Cir. 1971).

GOLDBERG, Circuit Judge, dissenting:

I fully agree with the authenticated analysis of Parts I, II, IIIA and IIIB of the majority opinion. The majority convincingly shows that the trial court had no power to place these defendants on probation, and that mandamus is the proper remedy for such an illegal sentence.

Having gone that far I would not balk at issuing the writ. The heart [1] of the majority's "discretionary" refusal to issue the writ is its fear that the District Judge, on resentencing, will be even more lenient [2] thus causing our writ to be "rendered a futile gesture." P. 1131 *supra*. I do not agree. I cannot believe that this District Judge would turn this proceeding into a charade. I would be loathe to attribute to this District Judge any insensitivity to Congress's mandate—recently expressed by increasing the penalty for this offense [3]—that the crime committed by the defendants is to be treated most severely. I am unwilling to speculate about the possibility that the District Judge, upon being told that he has given an illegally lenient sentence, will respond by imposing an even more lenient, albeit technically legal, sentence.[4] Such speculation,

such encroachment on the District Judge's sentencing prerogative, is emphatically not our task. I do not think it is proper for this Court to deprive the District Court of an opportunity to exercise its discretion in a lawful manner, or to relieve it of its judicial duty to do so, on the basis of some unsubstantiated speculations about how that Court may act. Our duty is only to issue the writ of mandamus where a statutorily illegal sentence was imposed. Such a sentence has been imposed here, for a crime that is singularly offensive to a free society—a flagrant and violent breach of the law by those charged with enforcing it. I would grant the writ.

1. The majority says that the "most important" reason for excusing the District Court from its duty to impose a legal sentence is "that granting the petition will work a substantial hardship on the Defendants." This is precisely the sort of factor that the District Court might consider at resentencing; just for the reasons given by the majority at pp. 1129–1131, I would say that it is not our task to assess this supposed hardship, the allegedly "impeccable" records of these defendants, the "vigor" of various prosecutions, and the like.

The majority's other reasons for refusing the writ are puzzling. The majority says that because the government cannot have the sentence reviewed on direct appeal, it is also not entitled to a writ of mandamus. This is exactly backward. The lack of direct review is precisely what makes mandamus appropriate. The majority itself quotes our rule that mandamus "comes into play when there is a want of [other] remedies" [p. 1128]. In addition, when the majority says, "It is well-settled that the Government may properly seek a writ of mandamus to correct an illegal sentence imposed by a District Court," p. 1127 *supra*, and cites nine cases, it refutes its own argument.

The majority also says, at length, that mandamus is inappropriate because "we deal here with an area in which the District Court should be afforded great deference by the reviewing court." When a district court is acting in a lawful discretionary fashion mandamus should indeed be refused; that is axiomatic. But a district judge has no discretion to impose a sentence that is not authorized by law, and the majority thoroughly demonstrated that the sentence in this case was not authorized by law.

Mandamus in this case would have nothing to do with the sentencing judge's discretion. It would require only that he not violate explicit statutory commands.

2. The majority speculates, p. 1131 *supra*, that "the District Court could simply sentence these Defendants to one year's imprisonment on Count One to run concurrently with a one year's sentence on Count Two. The five year probation would be eliminated."

3. See pp. 1118–1120 of majority opinion.

4. Indeed, this sort of speculation seems to me to trench on the district judge's sentencing discretion—the very thing that the majority, *see* pp. 1129–1131 *supra*, properly wants to avoid doing.